E. N. MONROE, Plaintiff, v. MARY FRANKLIN LYONS, IRA STOCKTON, W. F. STOCKTON, C. A. BIRNEY, O. D. STOCKTON, W. A. HOMBS, JOHN MARKEY, A. S. MONTGOMERY, J. B. SCIFERS, Administrator of the Estate of HENRIETTA BRANSCOMB, and O. H. MOBERLY, Commissioner of Finance in charge of LOGAN'S BANK OF GLENWOOD, by FRANK FARRELL, Special Deputy Commissioner.—98 S. W. (2d) 544.

Division One, November 12, 1936.

516

*York & York* for appellants.

*Clare Magee* for respondent.

FRANK, J.—Action to partition certain real estate. The judgment below decreed partition as prayed and defendants appealed.

One Thomas Stockton died seized of the land in question and left surviving him his widow, Henrietta Stockton, and the following named children: Mary Franklin Lyons, Ira Stockton, W. F. Stockton and O. D. Stockton. After Thomas Stockton's death his widow and children above named conveyed an undivided one-fifth interest in the estate, both real and personal, to one Charles E. Stockton, subject to the payment of the debts of the deceased, and subject to the rights of the widow. This conveyance reads as follows:

"THIS INDENTURE, made and entered into this July 2nd, 1917, by and between W. F. Stockton and Eva L. Stockton, his wife, O. D. Stockton and Dottie Stockton, his wife, Ira Stockton, a single man, Mary E. Franklin & Chas. E. Franklin, her husband, sole children and Henrietta Stockton, widow of Thomas Stockton, deceased, late of Putnam County, Missouri, parties of the first part, and Charles E. Stockton, party of the second part,

"WITNESSETH, That the parties of the first part for and in consideration of one dollar, love and affection, and the consideration hereinafter mentioned, do by these presents, bargain and sell, and agree that second party shall inherit as an heir of Thomas Stockton, deceased, the same as if he was a child of deceased, and that his interest in the real and personal estate of which said Thomas Stockton died seized and possessed shall be one undivided one-fifth interest, subject to the homestead and dower interest of said Henrietta Stockton, widow, in said personal and real estate, to him, and his heirs and assigns forever.

"The land affected being all the land of which said Thomas Stockton died seized, and same lies in Section thirty-two and thirty-three, in Township Sixty-six (66) Range Sixteen (16) and in Sections four and five, in Township sixty-five (65) Range Sixteen (16), in Putnam County, Missouri, and he the said Charles E. Stockton to have one-fifth interest in same subject to the payments of debts of deceased, and he also to have one-fifth of the personal property, subject to the payment of debts of deceased, and subject to the rights of said widow Henrietta Stockton, in each case. The intention herein being to make said Charles E. Stockton an heir of said Thomas Stockton, deceased, and of said Henrietta Stockton, and to make him share the same as other heirs of deceased. The reason for same is that said Thomas and Henrietta Stockton have raised the said Charles E. Stockton from infancy as a child of their own. (It is understood and agreed that any debts owing by said Charles E. Stockton, either to the estate of deceased or on which said deceased is surety for said Charles E. Stockton are to be deducted from his share in estate, and that should the share of Charles E. Stockton in the personal property not be sufficient to pay same, the balance shall be chargeable to and payable out of his share in the real estate of deceased conveyed to him above.

Nothing herein to deprive the widow of her right of election. This is to be binding on ourselves, our heirs and assigns.

"WITNESS the hands of said parties this day. Should the Widow elect to take a child's part, then the interest conveyed would be only a one-sixth interest.

"Mary Franklin
"Henrietta Stockton
"O. D. Stockton
"Dottie Stockton
"Chas. E. Franklin
"W. F. Stockton
"Eva L. Stockton
"Ira Stockton

"And I, Charles E. Stockton, accept the above, and agree that I have no further claims against said estate, other than is conveyed to me in the above, this to be binding upon myself, my heirs and assigns forever.

"WITNESS my hand this July 2nd, 1917.

"Charles E. Stockton."

Said deed was duly acknowledged and recorded. Thereafter Charles E. Stockton executed a deed of trust on the undivided one-fifth interest conveyed to him by said deed, for the purpose of securing the payment of a certain note described in said deed of trust. Default was made in the payment of said note and the deed of trust was foreclosed. E. N. Monroe purchased the interest of Charles E. Stockton at such foreclosure sale and thereafter brought this suit.

Appellants contend that plaintiff, E. N. Monroe, cannot maintain this action because he has no interest in the land sought to be partitioned.

The claim in support of this contention is that the alleged deed executed by the widow and children is void, and hence conveyed no interest in the land to the grantee, Charles E. Stockton. If this be true, then plaintiff, E. N. Monroe, did not acquire any title by purchasing at the foreclosure sale under a deed of trust executed by Charles E. Stockton upon lands in which he had no interest.

The contention made calls for a construction of the deed. The rules governing the construction of deeds are well settled. In Waldermeyer v. Loebig, 222 Mo. 540, 551, 121 S. W. 75, we said:

"Again and again it has been ruled by this court that a deed must be read as a whole, in a word, by its four corners, and that many of the old formulas were no longer invoked by the courts. All rules of construction rest upon the principle that they were designed to ascertain the intention of the grantor and effectuate it unless some positive rule of law would be infringed by so doing."

The cited case quotes approvingly the following:

"Every deed is to be construed according to the intention of the parties, as manifested by the entire instrument, although it may not comport with the language of a particular part of it. Thus a recital or a preamble in a deed may qualify the generality of the words of a covenant or other parts of a deed."

The opinion further quotes from Bean v. Kenmuir, 86 Mo. 666, 671, as follows:

"But rules of interpretation, formerly adhered to with much strictness, have been changed, or modified, or abandoned, when, in their modern applications, they have been found hostile to the end the courts struggle to attain, which is to give effect to the grantor's intention, and to effect which they make it the paramount rule to read the whole instrument, and, if possible, give effect and meaning to all its language."

Appellants contend that the instrument in question is not a deed but is a contract between the grantors and Charles E. Stockton, grantee, by the terms of which the parties sought to make Charles E. Stockton an heir of Thomas Stockton by adoption.

We do not so construe the instrument. While it recites that "the intention herein being to make said Charles Stockton an heir of said Thomas Stockton, deceased, and of said Henrietta Stockton, *and to make him share as other heirs of deceased*" (italics ours), yet when the instrument is viewed from its four corners, as it must be, we are forced to the conclusion that grantors intended to convey to Charles E. Stockton an undivided one-fifth of the estate subject to the debts of the deceased and the widow's rights, so that he would share in the estate the same as though he were an heir of deceased. While the deed does contain the operative words of conveyance ordinarily used in a deed of conveyance, the granting clause recites, "That the parties of the first part for and in consideration of one dollar, love and affection, and the consideration hereinafter mentioned do by these presents bargain and sell," etc. Another provision in the deed is "that his interest in the real and personal estate of which said Thomas Stockton died seized and possessed shall be one undivided one-fifth subject to the homestead and dower interest of said Henrietta Stockton, widow, in said personal and real estate, to him and his heirs and assigns forever." The deed concludes with a specific reference to "his share in the real estate of deceased conveyed to him above." This reference to the share in the *real estate above conveyed*, together with the words "bargain and sell" used in the granting clause are clearly indicative of an intention on the part of the grantors to convey a present interest in the estate. We recognize that a deed must contain operative words of conveyance, but it is not indispensable that any particular words or phrases be employed. Any words which indicate a clear intention to convey, and are sufficient to effectuate that pur-

pose will suffice. Speaking to that question in Long v. Timms, 107 Mo. 512, 519, 17 S. W. 898, we said:

"The time has long since passed, when the tenure of lands by deed, if it ever existed in this country, was dependent upon the technical meaning of words, or construction of sentences in use among old English conveyancers. The controlling canon for the construction of deeds, as of wills and other instruments of writing today, is to ascertain the meaning of the grantor from the words he uses, in the light of the circumstances which surrounded, attended and waited upon his use of them."

[See, also, Auglade v. St. Avit, 67 Mo. 434; Wilson v. Albert, 89 Mo. 537, 543-4, 1 S. W. 209; Carr v. Lackland, 112 Mo. 442, 460, 20 S. W. 624.]

█ It is next contended that the deed is void for want of a definite description of the land.

The land described in the deed is all of the land of which Thomas Stockton died seized, located in Sections 32 and 33, in Township 66, Range 16, and in Sections 4 and 5, in Township 65, Range 16, in Putnam County, Missouri. It will be noted that this description locates the lands in certain specified sections, townships and ranges but does not specify the particular part of the sections intended to be conveyed. However, the description does state facts from which the specific land intended to be conveyed can be identified. The land described is all of the lands in the specified sections, of which Thomas Stockton died seized. It would be permissible to show by the records of the county, or by other competent evidence what lands in such specified sections Thomas Stockton owned at the date of his death. Such evidence would neither contradict nor add to the description contained in the deed, but would locate and identify the land actually conveyed by the deed. The rule governing this question is stated in 18 Corpus Juris, page 181, section 62, as follows:

"Extrinsic facts pointed out in the description may be resorted to to ascertain the land conveyed, and the property may be identified by extrinsic evidence, as in the case of records of the county where the land is situate."

[See, also, Bank of Missouri v. Bates et al., 17 Mo. 583; McPike v. Allman, 53 Mo. 551; Adkins v. Moran, 67 Mo. 100; Hammond v. Johnson, 93 Mo. 214, 6 S. W. 83.]

In the cases last above cited, deeds which contained descriptions of land no more definite than the description under review in the instant case were upheld when aided by extrinsic evidence which identified the land intended to be conveyed.

In the instant case, there was no evidence offered to identify the land, but appellants admit in their statement and brief that the land described in plaintiff's petition is the land of which Thomas Stockton

died seized. Turning to the petition we find that it locates the land in Section 32, Township 66, Range 16, and Section 5, Township 65, Range 16, all in Putnam County, Missouri, and describes in detail the parts of such sections of which Thomas Stockton died seized. Now turning to the deed we find that it conveys all of the land in aforesaid Sections 32 and 5 of which Thomas Stockton died seized. The deed, the petition, and appellants' admission that the petition correctly describes the land in controversy, clearly identify the land conveyed by the deed.

■ It is next contended that the deed was the product of undue influence.

The only evidence offered in support of this contention is that contained in the following stipulation:

"It is stipulated and agreed that defendants have witnesses that will testify that Henrietta Stockton threatened to take her own life by drowning herself in the river if they, the defendants in this case, did not sign and execute the instrument as recorded in book 78, pages 159 and 160 of the conveyance records in the Recorder's Office of Putnam County, and further threatening that if the defendants did not sign and execute said instrument that she would disinherit them and see that they received nothing of her estate; that said defendants signed said instrument under and as a result of such threats; and it is further agreed that these statements were made before said instrument was signed."

Before the deed could be set aside because of the threats made by the widow, it would have to be shown that such threats amounted, in effect, to virtual coercion and rendered grantors incapable of freely exercising their own will power and judgment, and substituted the wish and will of the widow for that of the grantors. [Elzea v. Dunn, 297 Mo. 690, 249 S. W. 933, 937.] No such showing was made in this case. It is agreed in the stipulation that defendants had witnesses who would testify that the widow threatened to take her own life and disinherit defendants if they did not execute the deed. No showing was made as to how this threat affected defendants or what influence, if any, it had over them. Neither was it shown that the widow would probably execute the threats if the deed was not made, or that defendants believed she would do so. There was no evidence tending to show that the deed would not have been made but for the threats, or that its execution was the result of such threats. No witness testified at the trial. The deed and the stipulation above quoted constitute the entire evidence in the case. Appellants argue that it was agreed in the stipulation that appellants signed the deed as a result of the threats made by their mother. This is a misconception of the stipulation. An examination of the stipulation will show that instead of agreeing that the deed was made as a result of the threats,

the parties simply agreed that defendant had witnesses who would so testify. Such testimony is a mere opinion and conclusion of the witness giving it, invades the province of the trier of the fact, and has no probative value as evidence. [Roark v. Pullman, 207 Mo. App. 425, 429, 229 S. W. 235.] If the deed was the product of duress or undue influence of the mother, a cause of action to set aside and cancel it accrued to the grantors on the date of its execution. This deed was made on July 2, 1917. So far as the record shows the grantors stood by for more than seventeen years without making any complaint or protest against the deed. The first complaint appears in their answer filed in this case on March 15, 1934. While plaintiff cannot avail himself of either limitations or laches because neither are pleaded, yet the lapse of the long period of time without complaint from grantors, together with the recited consideration in the deed of love and affection, and the further recitation that the reason for making the deed was because the grantee, Charles E. Stockton, had been reared from infancy as a member of the family may be considered as tending to show that love and affection for Charles E. Stockton, and not the threats of the mother prompted the execution of the deed.

Whether or not the threats of the mother to take her own life and disinherit defendants could, under any circumstances, amount to duress or undue influence, we need not and do not decide. What we do hold is that such threats, standing alone, unaided by any fact or circumstance tending to show what influence, if any, it had over the mind of the grantors would not authorize the setting aside of the deed. Before the deed could be set aside, there would have to be sufficient substantial evidence from which the trier of fact could believe and find that by reason of such threats, the will of grantors was overcome, and but for such threats they would not have executed the deed. [Mississippi Valley Trust Company v. Begley, 298 Mo. 684, 252 S. W. 76.] There was no evidence in the case which would authorize a court to so believe or so find.

■ The final contention is that the deed is void because it cannot be definitely determined from the terms of the deed itself what interest it conveys.

The deed conveys an undivided one-fifth of the estate subject to the rights of the widow. The argument is that if the widow should elect to take a child's part in lieu of dower, the grantee would take an undivided one-sixth instead of an undivided one-fifth of the estate, and since it cannot be determined from the face of the deed whether the widow will elect to take a child's part, the interest conveyed by the deed is indefinite and uncertain.

The widow's rights are fixed by statute. She may either exercise or waive her statutory right of election to take a child's part in lieu of dower. The deed was made subject to that right. The fact that the

widow might or might not exercise her right of election does not alter the fixed terms of the deed or the interest conveyed thereby. The deed conveyed a full undivided one-fifth interest in the estate. It is true that such interest was burdened with the widow's right of election. Her right of election was, in effect, an encumbrance on the one-fifth interest. The fact that she saw fit to cancel that encumbrance by waiving her right of election, did not change the *quantum* of interest conveyed by the deed.

The judgment below should be affirmed. It is so ordered. All concur.