**CITY OF PARKVILLE, a Municipal Corporation, Appellant,**

v.

**NORTHERN FARMS, W.K. Jenkins and the Jenkins Family, Services, Respondents.**

**No. WD 52906.**

Missouri Court of Appeals,
Western District.

Submitted March 13, 1997.

Decided June 24, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 29, 1997.

Application to Transfer Denied Sept. 30, 1997.

Jack L. Campbell, Kansas City, for appellant.

Gerard Eftink, Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and SMART and EDWIN H. SMITH, JJ.

PER CURIAM.

The City of Parkville ("City") brought a declaratory judgment action pursuant to § 71.015, RSMo 1994[1], seeking to annex property owned by the Jenkins family. The trial court refused to issue a declaratory judgment authorizing the City to proceed with statutory annexation procedures. The City appeals, claiming that the trial court erred in refusing to enter a declaratory judgment in its favor because the City met all the requirements of § 71.015, also called "The Sawyers Act.". The judgment of the trial court is reversed and the cause remanded to the trial court with directions to enter a declaratory judgment in favor of the City of Parkville.

## FACTUAL BACKGROUND

The City of Parkville is a fourth class city. In 1990, the population of the City was approximately 2,400. At the time of the hearing on the City's petition for declaratory judgment, the population was over 3,000. The Jenkins family owns several parcels of land abutting the southwest boundary of the City in an unincorporated area of Platte County. On December 15, 1995, the City's

---

1. All sectional references are to Missouri Revised Statutes 1994, unless otherwise indicated.

Board of Aldermen passed Ordinance 1555, authorizing the proposed annexation of the Jenkins' property. The area in question consists of approximately 1,600 acres currently used as farmland[2]. The record does not reveal the current size of the City. The area sought to be annexed is bounded on the north by the north right of way line of Highway FF, on the west by City property, and on the south by the Missouri River and by property adjacent to the river. No one resides on the land, although seasonal farm workers have at various times stayed at a farmhouse located upon the land. In addition to the farmhouse, there are two trailer houses on the Jenkins' property. There are no paved roads, sidewalks, street lights or water lines. The property is located upon a flood plain. A levee runs along part of the land. The levee has at least two unrepaired breaks caused by the 1993 flood. Annexation of the land has been discussed since at least 1974.

The land in question is located within the Platte County Zoning District and zoned PI, Planned Industrial District. The City proposes to rezone the annexed area to I-2, Light Industrial District. When the Jenkins' family purchased the land, they financed that purchase by using industrial revenue bonds. W.K. Jenkins, the president of Northern Farms, testified that they could not have purchased the property without use of the bonds because prime interest rate at the time was twenty one and one-half percent, while the bonds carried a ten percent interest rate. He admitted that the law required that the land be used for industrial purposes. Mr. Jenkins, or his attorney, told the Platte County Development Authority that the land was going to be industrially developed.

The City's sewer treatment plant is located outside of the City in the area that it proposes to annex. Except for the sewer plant, no one has erected any building in the area for twenty years. The City has plans to build a municipal sports complex for the benefit of the City's residents. It is planned that the complex would occupy some part of the land proposed for annexation. The City is also concerned that the Jenkins' property might be used for a riverboat casino or for a land based casino if the land is conveyed to an Indian tribe.

The City, in its Plan of Intent, proposed to offer normal municipal services to the annexed area. The Plan addressed police services, fire protection services, ambulance and emergency medical services, sewer systems, street maintenance, and parks and recreation. The fire protection services are currently provided by and would continue to be provided by the South Platte Fire Protection District and the ambulance and emergency services by the Metropolitan Ambulance Services Trust (M.A.S.T.). Sewer and police service would be provided immediately upon annexation. The Plan of Intent also reflected that the assessed value of Platte County farmland is 12% of the appraised value. The current tax rate for properties located in Parkville is .79 per 100 dollars in assessed valuation. The Mayor of Parkville, William Quitmeier, testified that the land was not being annexed to generate additional tax revenue. He estimated that the taxes on the property would amount to $825.00 at this point.

The City hired a surveyor, Thomas Dobson, to do a survey, set the boundaries of the area to be annexed, and draft a legal description. In establishing the boundaries of the land to be annexed, Mr. Dobson used the original government survey. The field work for that survey had been performed in the 1840's. The plat was published in 1863.

---

2. The legal description of the area is given as:
   Beginning at the intersection of the West line of Section 35, Township 51 North, Range 34 West and the North right of way line of County Road FF; thence Northwesterly along said North right of way line to the intersection with the North line of Section 33, Township 51 North, Range 34 West; thence Westerly along said North line to the Northwest corner of the Northeast Quarter of said Section 33; thence Southerly along the West line of the East one half of Section 4, Township 50 North; Range 34 West, a distance of 8465.00 feet; thence East and parallel to the North line of said section 33, to the Missouri State boundary; Northeasterly along said Missouri State boundary, to the East line of Section 3, Township 50 North, Range 34 West; thence Northerly along said East line and continuing along the West line of said Section 35, to the Point of Beginning.

Since the time of that survey, the Missouri River has changed course. Missouri has gained some territory and Kansas has lost some territory. In the original survey there was no Section 3, a section that is part of the legal description of the property to be annexed. Section 3 is shown on the County Assessor's map.

On December 27, 1995, the City filed its second amended petition for declaratory judgment authorizing annexation. In its petition, the City contended that it had complied with the statutory requirements for annexation as prescribed by § 71.015. The City stated that the contiguous boundary common to the existing city limit and the area proposed for annexation was at least 15% of the length of the perimeter of the property to be annexed as required by § 71.015(1). It contended that the annexation was reasonable and necessary because: (1) the City's new sewer plant will be brought within the City limits; (2) it is necessary for the extension of parks and recreation facilities; and (3) the proposed use of the Jenkins' property as a possible gaming facility requires uniform application and enforcement of municipal zoning and health ordinances. The City also stated that it is able to furnish normal municipal services to the area within a reasonable time, as reflected in its Plan of Intent.

On February 22, 1996, trial on the matter was had. After taking the matter under advisement, the trial court denied the City's petition. The trial court found: the property to be annexed complied with § 71.015 in that the length of the contiguous boundary was at least 15% of the perimeter of the area; the City prepared a Plan of Intent; the Jenkins' property is located upon a flood plain and the levee servicing the property has at least two unrepaired breaks that the City could not afford to fix and no evidence about maintenance of the levee was presented; there has been no commercial or residential development in the proposed area of annexation; there are no paved streets, sidewalks, water lines, street lights and a single trunk sewer line within the area; the City would not provide fire protection service, ambulance service or water; the City believes that an-

nexation is necessary because of the adverse impact of industrial development and the City wishes to expand its tax base if industrial development is located upon the Jenkins' property; the Jenkins family was concerned that the use of the property would be restricted and that there would be additional taxes; the legal description of the Jenkins' property is deficient as a matter of law; there were no industrial areas to develop in the City and there had been no permits for commercial buildings in the last three years; 40% of the land within the City was undeveloped although a large portion of that is owned by Park College; the City has not spilled over in the proposed area; there was no evidence presented concerning the City's need to expand; and the proposed City boundaries do not configure the city limits in a regular manner. The City appeals.

## STANDARD OF REVIEW

When we review the decision to annex, we examine whether there is substantial evidence that the reasonableness and necessity of the annexation are fairly debatable. *Binger v. City of Independence*, 588 S.W.2d 481, 485 (Mo. banc 1979); *City of Lake Winnebago v. Gosewisch*, 932 S.W.2d 840, 843 (Mo.App.1996). Both the City and the residents of the area to be annexed are entitled to the benefit of this test of reasonableness. *City of Bourbon v. Miller*, 420 S.W.2d 296, 300 (Mo. banc 1967). Neither the trial court nor this court may substitute its judgment or discretion for that of a city's legislative body. *Id.* There is no burden of proof in annexation cases, only a burden of proceeding with the evidence. *Mayor, Councilmen & Citizens of Liberty v. Beard*, 613 S.W.2d 642, 651 (Mo. App.1981). If there is substantial evidence supporting both sides of the issue, deference must be given to the City's judgment. *Lake Winnebago*, 932 S.W.2d at 843. Our inquiry is thus limited to whether the action of the City was arbitrary and completely unreasonable. *Id.* There are no fixed rules to follow in applying the general test; each case must be decided upon its own set of unique facts. *Beard*, 613 S.W.2d at 651.

## SECTION 71.015

Involuntary annexation must meet certain statutory requirements. Section 71.015 provides a comprehensive scheme for such annexations. Initially, a city must determine that the land it proposes to annex is contiguous to its borders and that the length of the contiguous boundary "is at least fifteen percent of the length of the perimeter of the area proposed for annexation." § 71.015.1(1). After making this determination, a city must then propose an ordinance that sets forth (1) the area to be annexed; (2) that the annexation is reasonable and necessary to the development of the city; and (3) that a Plan of Intent has been developed by the city. § 71.015.1(2)(a),(b), & (c). A date for public hearing must be set and the city must make a good faith effort to notify the fee owners of record within the area of proposed annexation. § 71.015.1(3).

At the hearing, a city is required to present its Plan of Intent and evidence in support of its Plan, including a list of services provided by the city, a proposed time schedule for provision of these services, property tax assessment levels, proposed zoning, and the effective date of the proposed annexation. § 71.015.1(4). After a city has met the requisite conditions precedent as prescribed by the statute, it must then file an action in the circuit court praying for a declaratory judgment. § 71.015.1(5). Section 71.015.1(5) states, in pertinent part:

> The petition in such action shall state facts showing:
>
> (a) The area to be annexed and its conformity with the condition precedent referred to in subdivision (1) of this subsection;
>
> (b) That such annexation is reasonable and necessary to the proper development of the city, town, or village; and
>
> (c) The ability of the city, town, or village to furnish normal municipal services of the city, town, or village to the unincorporated area within a reasonable time not to exceed three years after the annexation is to become effective. Such action shall be a class action against the inhabitants of such unincorporated area under the provisions of section 507.070, RSMo.

## PRELIMINARY REQUIREMENTS

The trial court found that the City complied with the statutory requirement that the contiguous boundary of the property to be annexed common to the City is at least 15% of the length of the perimeter of that property. However, the trial court also found that the legal description of the Jenkins' property was deficient as a matter of law because it is not located by measurements to monuments of the section of the United States Survey, subdivision, or other unit in which the property is legally described. The trial court found that no "Section 3" was established by government survey. Practically speaking, the trial court could not properly find the 15% contiguousness requirement without identifying the boundaries of the Jenkins' property.

■ As a preliminary matter, we note that in order to deny a city the authority to annex because of a procedural violation, prejudice must be demonstrated. *Lake Winnebago*, 932 S.W.2d at 845. The respondents in this action have not demonstrated any prejudice based upon an insufficient legal description of the land. There was no confusion about the identity of the land proposed for annexation.

■ Thomas Dobson, a licensed registered land surveyor set the boundaries of the area to be annexed. The total perimeter of the land proposed for annexation was 30,428.79 feet. The contiguous boundary was 4,825 feet, 15.8% of the total perimeter. Mr. Dobson used the original government survey to establish the boundaries of the land to be annexed. The field work for that survey had been performed in the 1840's and the plat was published in 1863. The government survey does not accurately describe the property as it is situated today. The topography of the land has changed. Missouri has gained some territory and Kansas has lost some territory. In the original survey there was no Section 3, a section that is part of the legal description of the property to be annexed as it is shown on the County Assessor's map. The Kansas section numbers from the original survey cannot be used be-

cause they do not line up with the sections in Missouri.

Respondents argue that the description of the property proposed for annexation is inadequate because there is no Section 3 on the government survey and the lack of such a section makes it difficult to determine where the boundary line is actually located. However, although the deficiencies in the description of the land might make it more difficult to locate, it is not impossible. Mr. Dobson was able to accurately locate the land described. "[A] description of a particular parcel is sufficient if a competent surveyor can locate the land on the ground." *Weber v. Johannes*, 673 S.W.2d 454, 458 (Mo.App. 1984). Mr. Dobson testified that he used Section 3 as part of the description. That section is clearly marked on the Platte County Assessor's survey. Reference to that survey would allow a surveyor to locate the land in question with reasonable certainty.

Description of the land should not be limited only to references in the government survey.

In general, any description in a deed is sufficient if it affords the means of identification of the property. 26 C.J.S. Deeds § 30, p. 640; *Mathews v. O'Donnell*, 289 Mo. 235, 233 S.W. 451, 457. Extrinsic evidence is always admissible to explain boundary calls and to apply them to the subject matter and thus give effect to the deed. *City of Warsaw v. Swearngin*, Mo., 295 S.W.2d 174, 181. "[A] court will declare a deed void for uncertainty of description only where, after resorting to oral proof or after relying upon other extrinsic or external proof or evidence, that which was intended by the instrument remains mere matter of conjecture, * * *." 26 C.J.S. Deeds § 30, pp. 644–645. *Mathews v. O'Donnell*, 289 Mo. 235, 233 S.W. 451, 457; *Monroe v. Lyons*, 339 Mo. 515, 98 S.W.2d 544, 547.

*Hamburg Realty Co. v. Woods*, 327 S.W.2d 138, 150 (Mo.1959). We see no reason why the requirements for the legal description of the property proposed for annexation should differ from the requirements for the legal description in a deed. In this case, Mr. Dobson located the boundaries with refer-

ence to the Platte County Assessor's survey and other readily ascertainable markers. He testified that any person utilizing his survey could place monuments at the corners called out on the survey's description. We hold that the description given is sufficient to identify the area to be annexed with reasonable certainty. We further agree that the City meets the 15% contiguousness requirement.

The City also meets the other requirements for a declaratory judgment action. The City passed an ordinance meeting the requirements of § 71.015(2). It set forth the area to be annexed, the reasonableness and necessity for the annexation, and the Plan of Intent formulated by the City in relation to the Jenkins' property. A notice of public hearing was published and a public hearing was held on December 19, 1995. The City met the conditional prerequisites for a declaratory judgment petition to be filed in the trial court.

## DECLARATORY JUDGMENT

As required by § 71.015.1(5)(a), the City stated facts showing that it had conformed to the condition precedent for bringing a declaratory judgment action. The City must also show that the proposed annexation is reasonable and necessary, and that it is able to furnish normal municipal services to the area within a reasonable time.

### A. It is Fairly Debatable that the Proposed Annexation is Reasonable and Necessary

Section 71.015.1(5)(b) provides that the petition for declaratory judgment shall state facts showing "[t]hat such annexation is reasonable and necessary to the proper development of the city, town, or village...." The trial court found that the city did not make a showing that the annexation was reasonable and necessary. Reasonableness is demonstrated where it is evident that the land proposed for annexation is located so as to be adaptable to urban purposes and is necessary or convenient to a reasonable exercise of city government. *Beard*, 613 S.W.2d at 651. "Necessity" is closely related to "reasonableness." *Id.* at 652. The need of a city for an

annexation is encompassed by the idea of reasonableness. *Id.* Case law describes several factors to be examined in the quest to determine whether it is fairly debatable that a proposed annexation is reasonable and necessary. It is not necessary that all of the factors be present in order to find an annexation is valid. *City of Ballwin v. Hardcastle,* 765 S.W.2d 324, 327 (Mo.App.1989). Each case must be decided upon its own facts and no one factor is considered controlling. *City of Centralia v. Norden,* 879 S.W.2d 724, 727 (Mo.App.1994).

The factors that we examine include:

(1) The City's need for residential or industrial sites within the area proposed for annexation;

(2) The inability of the City to meet its need without expansion;

(3) Needs that are reasonably foreseeable versus needs that are visionary;

(4) Past growth showing future necessity;

(5) Extent of spill over in the area proposed for annexation (used to evaluate future needs);

(6) Beneficial effect of uniform application and enforcement of municipal zoning ordinances;

(7) Beneficial effect of, and need for, uniform application and enforcement of municipal building, plumbing and electrical codes;

(8) Beneficial effect of, and need for, the extending of police protection to the area proposed for annexation;

(9) Beneficial effect of, and need for, uniform application and enforcement of municipal health ordinances;

(10) The City's need and ability to extend essential municipal services to the annexed area;

(11) The enhancement in value of the land by reason of its adaptability to uses by the City;

(12) Regularity of boundaries.

*Id.; See also City of Perryville v. Brewer,* 557 S.W.2d 457, 462 (Mo.App.1977).

■ The City argues that except for a few areas of vacant land to the east and to the north, the City has no way to expand unless it expands to the west, especially in terms of industrial development. Respondents claim that there are 800 acres of land within the City that can be developed and that the City has not spilled over to the proposed area of annexation. However, the land within the City that has not been developed is controlled primarily by Park College. The land is unsuitable for industrial development because Park College is leasing the land. The City Administrator testified that he had been approached by developers seeking to do business with the City, but that these developers had to be turned away because there is nothing available for development. In any event, a city is not precluded from annexing adjacent land simply because there is undeveloped land within its boundaries. *City of Centralia,* 879 S.W.2d at 727–28. It is not required that a city utilize all vacant lands before seeking to expand its boundaries. *Id.* at 728. In several annexation cases, the courts approved annexation where there was evidence that there was land vacant within the city available for development. *See Binger,* 588 S.W.2d at 488; *City of Centralia,* 879 S.W.2d at 727–28; *Beard,* 613 S.W.2d at 652. Consequently, the City has arguably shown a need for this site for industrial expansion. The pattern of growth in the City in recent years suggests that the City's interest is based on reasonable foreseeability. In the short run, annexation will probably not enhance the value of the land, although it is possible that in the long run annexation will have that effect. The City does show that, because of the limited number of traffic arteries, the development of the Jenkins land could have a profound effect on traffic in the City, which would affect the quality of life of the City's residents.

■ Respondents argue that farm land cannot be annexed, citing *Jones v. City of Ferguson,* 164 S.W.2d 112 (Mo.App.1942). *Jones* was decided prior to the annexation procedure established by § 71.015 and, in any event, involves a different fact scenario. In *Jones,* it was apparent that the city did not really intend for the land to be devel-

oped, and the city sought annexation to increase its tax base:

It seems clear from the evidence in the case at bar that the only advantage of any consequence, which would accrue to defendant from the annexation of the territory involved herein, would be to bring into the city a considerable amount of property for tax purposes and to subject the residents of the annexed area to taxes, fees and assessments such as municipalities are authorized to levy, while on the other hand no reciprocal advantage or advantages would accrue to the owners of the property annexed.

*Id.* at 119–20. In the instant case, the tax advantage to the City is minimal. Mayor Quitmeier estimated that $825.00 would be raised from the land as it is now used. The increased tax burden on Jenkins if the land is not developed is about $.50 per acre per year. Consequently, even if the tax effect were a proper consideration, *Jones* would have little applicability because it is obvious the City is concerned about other things more than just taxing agricultural land.

In any event, *Jones* involved an annexation procedure under § 7097, RSMo 1939. In *Jones*, the burden was on the plaintiffs to show that the proposed annexation was "unreasonable, unjust and unnecessary." *Id.* at 117. This standard differs significantly from the standard we use to review actions involving annexation procedures under § 71.015, wherein we examine whether there is substantial evidence that the reasonableness and necessity of the annexation are fairly debatable. *Binger*, 588 S.W.2d at 485.

The court in *Jones* also set out the rules by which it was to be determined when the city could not take in contiguous lands: (1) when the lands were used only for the purposes of agriculture of horticulture and have value because of such use; and (2) when the lands are vacant and do not derive a special value from adaptability for city uses. *Id.* at 118. By contrast, modern cases state that the fact that the area proposed for annexation is agricultural, does not make annexation unreasonable. *City of Des Peres v. Stapleton*, 524 S.W.2d 203, 209 (Mo.App.1975).

The fact that an area is sparsely populated without significant residential development and that much of it is utilized for purposes of an agricultural or rural nature is an important consideration but not determinative on the issue of reasonableness. It does not preclude an examination of other evidence indicating the land is in fact adaptable to urban usage.

*City of O'Fallon v. Bethman*, 569 S.W.2d 295, 305 (Mo.App.1978). There is nothing in § 71.015 that prevents the annexation of vacant lands. *City of Centralia*, 879 S.W.2d at 730. Moreover, there is nothing in the record that precludes any industrial development, albeit the area in question lies in a flood plain. There is evidence in the record that the Jenkins considered the industrial possibilities of the land; the land was purchased using industrial bonds and is zoned industrial. If Jenkins himself had not acknowledged the likelihood of industrial development of the land, his arguments would be more substantial. However, the foregoing factors contribute to the reasonableness of the City's arguments.

Respondents' reliance upon other cases is also misplaced. Neither *State ex info. Eagleton v. Champ*, 393 S.W.2d 516 (Mo. banc 1965) and *In re Incorporation of Village of Lone Jack*, 471 S.W.2d 513 (Mo.App.1971) were § 71.015 actions. Both cases involved proceedings under § 80.020, the statute which authorizes a court to issue an order, after proper proceedings, to incorporate an unincorporated town or village. *See Lone Jack*, 471 S.W.2d at 517. Section 80.020 provides:

Whenever two-thirds of the taxable inhabitants of any town or village within this state shall present a petition to the county commission of the county, setting forth the metes and bounds of their village and commons, and praying that they may be incorporated under a police established for their local government, and for the preservation and regulation of any commons appertaining to such town and village, and the county commission shall be satisfied that two-thirds of the taxable inhabitants of such town or village have signed such petition, and that the prayer of such petition is reasonable, the county commission may declare such town or village incorporated,

designating in such order the metes and bounds thereof, and thenceforth the inhabitants within such bounds shall be a body politic and corporate, by the name and style of "The town of ...." naming it and by that name they and their successors shall be known in law; have perpetual succession, unless disincorporated; sue and be sued; plead and be impleaded; defend and be defended in all courts and in all actions, pleas and matters whatsoever; may grant, purchase, hold and receive property, real and personal, within such town and no other, burial grounds and cemeteries excepted; and may lease, sell and dispose of the same for the benefit of the town, and may have a common seal, and alter the same at pleasure.

Section 80.020, and the procedures that have evolved around its implementation, differ from § 71.015. Even where making comparisons with other cases arising out of § 71.015, it must be remembered that each annexation case is unique and must be decided upon its own facts and circumstances. Respondents' attempts to compare this case with cases involving residential development must also fail. The City in the instant case claims that it has a need to annex land for industrial purposes.

■ The City also has an interest in applying its zoning codes and building codes to the Jenkins' property. The purchase of the land was financed through the use of industrial bonds. W.K. Jenkins testified that the land could not have been purchased without financing it with the bonds. Platte County has zoned the area PI, Planned Industrial District. The City plans to change the zoning to I–2, Light Industrial District. Development of this property would affect the City in areas of street maintenance, sewer treatment and police protection. The City is also concerned that the Jenkins' property might be used for a riverboat casino or for a land-based casino if the land is conveyed to an Indian tribe. These are legitimate areas of interest warranting the City's concern. Although it does not in and of itself provide justification for annexation, "orderly planning and development of adjacent boundaries is a salutary factor for consideration...." *City of Flat River v. Counts*, 596 S.W.2d 446, 450 (Mo.App.1979). The City claims it is con-

cerned with potential traffic problems and the impact of development on its residents. The City mentions that it has experienced traffic problems from the operation of a landfill west of the City. The only highway access to the land that is proposed for annexation is through downtown Parkville. The City wishes to have some say in the future development of the area. We cannot say that the City's concern is an illegitimate concern. The City need not wait for actual damage to occur. *Lake Winnebago*, 932 S.W.2d at 848 n. 8.

The City believes it would be beneficial to have its sewer plant and the proposed sports complex within the city limits, because the City desires to provide police protection to these areas. There have been reports of vandalism in the area and the City desires to police the area. Respondents suggest that the City would like to annex residential areas or that it might be reasonable and necessary to annex a only a portion of the area included in the present annexation proceedings. It is not within the province of respondents or this court to substitute our judgment as to what would be the best or most advisable area to annex. *City of St. Joseph v. Hankinson*, 312 S.W.2d 4, 17–18 (Mo.1958).

The trial court seems to focus some attention on the fact that the land is in a flood plain, the levee is broken, and the City has no plan for fixing the levee, the repair of which would apparently cost several hundred thousand dollars. In other words, the trial court may have doubted the likelihood of industrial development of the land without repair of the levee. However, the evidence fails to show clearly that the likelihood of flooding and the absence of a repaired levee are enough to deter industrial development of the area. Consequently, under a "fairly debatable" standard, we conclude that the City has met its burden under § 71.015. We hold that the City has met its burden of proceeding with the evidence. The evidence presented supports a finding that it is fairly debatable that the proposed annexation was reasonable and necessary.

## B. The City is Able to Provide Municipal Services

■ Section 71.015.1(5)(c) directs that the City, in its petition for declaratory judgment,

state facts that show "[t]he ability of the city, town, or village to furnish normal municipal services of the city, town, or village to the unincorporated area within a reasonable time not to exceed three years after the annexation is to become effective." Respondents contend that the City had absolutely no plan to provide municipal services to the area that it proposed to annex. Respondents point out that fire protection services are currently provided by and would continue to be provided by the South Platte Fire Protection District. The same is true of ambulance/EMS services which are now provided by the Metropolitan Ambulance Services Trust (M.A.S.T.). Under the City's plan this would continue unchanged. The City did plan to provide sewer and police services immediately upon annexation. It also planned to provide street maintenance when streets were developed. The City also offered parks and recreation facilities as a municipal service.

■ Admittedly, the City does not provide many services to its residents. "The test, however, is whether the city is able to furnish to the area *services which the municipality presently provides* its populace." *City of Jefferson v. Smith,* 543 S.W.2d 547, 552 (Mo.App.1976). Furthermore, if a city does not provide certain services, it has no duty to list them in its Plan of Intent. *Lake Winnebago,* 932 S.W.2d at 844. The record reflects that the City prepared a Plan of Intent in accordance with the requirements of § 71.015, listing the services it provides to its residents and the services it planned to provide upon annexation. Every service that the City provides to its current residents will be provided to the Jenkins' property. While flood protection through the repair of the levee would perhaps be a valuable service, we have no authority for the proposition that the City cannot annex the property without also repairing the levee. The Mayor of Parkville, William Quitmeier, testified that the City had the financial resources to extend municipal services into the area proposed for annexation. Accordingly, we hold that the City has met the statutory requirements.

## C.  *Class Action*

■ Respondents contend that the City's annexation effort must fail because the City failed to bring a class action as is required by § 71.015.1(5). This contention is without merit. The statute contemplates that in many cases a class action will be necessary to join all landowners in the area to be annexed. The point is that all landowners should be joined. Here, all landowners were joined as party defendants without the necessity of a class action. It would have been an inappropriate procedural exercise to attempt a class action since the landowners were not "so numerous that joinder of all members is impracticable." *See* Rule 52.08. If the statute were intended to specifically require a class action in every case, the City would never be able to annex property owned by just a few owners. This would be an absurd interpretation of the statute, an interpretation we reject.

## CONCLUSION

The trial court erred in denying the City of Parkville's petition for declaratory judgment authorizing the City to proceed with statutory annexation procedures. The City met all the requirements of § 71.015. Therefore, the judgment of the trial court is reversed and the cause remanded to the trial court with directions to enter a declaratory judgment in favor of the City of Parkville.