

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION TWO</u>

| | | |
|---|---|---|
| CITY OF LAKE SAINT LOUIS, MISSOURI, | ) ) ) | No. ED102003 |
| Plaintiff/Respondent, | ) ) | Appeal from the Circuit Court of St. Charles County |
| v. | ) ) | |
| CITY OF O'FALLON, MISSOURI | ) ) | Honorable Nancy Schneider |
| Defendant/Appellant. | ) | Filed: April 28, 2015 |

<u>Introduction</u>

City of O'Fallon, Missouri (O'Fallon) appeals from the circuit court's entry of summary judgment in favor of City of Lake Saint Louis, Missouri (Lake St. Louis) on Lake St. Louis's petition seeking a declaratory judgment establishing Lake St. Louis's northern boundary. We affirm.

<u>Factual and Procedural Background</u>

This case involves a dispute over the annexation of land. The area in dispute is approximately depicted in the map below by the cross-hatched area:



O'Fallon lies to the north of disputed property and Lake St. Louis to the south; the

municipalities have asserted competing claims to the disputed territory.

In 1978, Lake St. Louis filed a Petition for Declaratory Judgment, Cause No.

20041 (Annexation Case), wherein it sought to annex certain real property in St. Charles

County. The legal description of the northern boundary of the property seeking to be

annexed provided as follows:

> …thence westwardly along the northern right-of-way line of
> Interstate Highway 70 to a point which is a perpendicular distance
> northwardly to the centerline of said Interstate Highway 70 from the
> intersection of the east right-of-way line of Lake Saint Louis Boulevard
> and the southern right-of-way line of Interstate Highway 70….

On September 29, 1981, the court entered a Decree of Declaratory Judgment in the Annexation Case approving the annexation of the property described therein (Annexation Judgment). On February 2, 1982, an election was held in Lake St. Louis approving the annexation. On May 17, 1982, the Annexation Judgment was recorded with the St. Charles County Recorder of Deeds.

Between 1982 and 2004, the disputed area was owned by the Missouri Department of Transportation (MoDOT). Negotiations between property owners, O'Fallon, MoDOT, and St. Charles County resulted in the annexation of several properties, as well as the improvement and redevelopment of the roadway and properties in the disputed area beginning in 2004. Beginning in 2005, O'Fallon purported to annex some of the parcels of property in the disputed area.

On March 26, 2009, Lake St. Louis filed a petition for declaratory judgment seeking a judgment declaring that Lake St. Louis's northern boundary was the northern line of the disputed area and that O'Fallon had not annexed the disputed territory.

On April 30, 2009, O'Fallon filed a motion to dismiss asserting the exclusive remedy to test a city's right to territory in an annexation dispute is by *quo warranto* action. On June 15, 2009, the circuit court sustained the motion to dismiss. On appeal, the Missouri Supreme Court reversed the judgment of dismissal and remanded to the circuit court for further proceedings in the declaratory judgment action. On remand, O'Fallon filed a two-count counterclaim for a declaratory judgment declaring O'Fallon annexed the properties in dispute and, alternatively, for unjust enrichment.

On May 28, 2013, O'Fallon moved for summary judgment. On June 7, 2013, Lake St. Louis moved for summary judgment. Lake St. Louis attached a survey

completed by David Skornia (Skornia) of Pickett, Ray & Silver (2013 survey) providing a metes and bounds description and a survey based upon the legal description in the Annexation Judgment that depicted Lake St. Louis's northern boundary coinciding with the northern boundary of the disputed area, thus supporting Lake St. Louis's position that the disputed property had been annexed by it in 1982.

On June 18, 2013, O'Fallon filed a motion for an extension of time to file a reply in support of its motion for summary judgment to obtain its own survey and to respond to Lake St. Louis's alleged uncontroverted material facts. The circuit court granted an extension. O'Fallon's subsequent filings did not include a survey.

On March 28, 2014, the circuit court granted summary judgment in favor of Lake St. Louis and against O'Fallon on the parties' cross-motions for summary judgment. The circuit court found the disputed area was annexed by Lake St. Louis in 1982 and the exhibits filed by O'Fallon failed to create a genuine dispute with regard to this fact. The circuit court found the 2013 survey was the only survey of Lake Saint Louis's northern boundary presented to the court and O'Fallon did not produce a survey placing the boundary in any other location. The court found, as a matter of law, O'Fallon could not annex any portion of the incorporated area of Lake St. Louis and O'Fallon's attempts to annex property south of the boundary line depicted in the 2013 survey were invalid, improper, and failed as a matter of law.

On August 7, 2014, Lake St. Louis filed a motion to dismiss Count II of O'Fallon's counterclaim for unjust enrichment for failure to state a claim. On August 28, 2014, O'Fallon sought leave to file an amended counterclaim by interlineation. On September 5, 2014, the circuit court entered its Order and Final Judgment granting Lake

4

St. Louis's motion to dismiss and denying O'Fallon's leave to amend. The court found the dismissal without prejudice of O'Fallon's outstanding claim disposed of all available remedies and the judgment was a final judgment as to all issues. This appeal follows.

## Point on Appeal

On appeal, O'Fallon argues the circuit court erred in granting Lake St. Louis's motion for summary judgment and denying O'Fallon's cross-motion for summary judgment, because O'Fallon lawfully annexed the disputed area, in that: (1) Lake St. Louis never annexed the disputed territory and (2) alternatively, if it did, it surrendered sovereignty over the disputed area by acquiescence, waiver, or estoppel prior to O'Fallon commencing annexation proceedings.[1]

## Standard of Review

We review the circuit court's grant of summary judgment *de novo*. ITT Comm. Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). Whether to grant summary judgment is purely an issue of law. Ashford Condo., Inc. v. Horner & Shifrin, Inc., 328 S.W.3d 714, 717 (Mo. App. E.D. 2010). We will uphold summary judgment on appeal only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. ITT Comm. Fin. Corp., 854 S.W.2d at 376; Rule 74.04(c). The record is viewed in the light most favorable to the party against whom judgment was entered. Citibrook II, L.L.C. v. Morgan's Foods of Missouri, Inc., 239 S.W.3d 631, 634 (Mo. App. E.D. 2007).

---

[1] O'Fallon's brief fails to comply with Rule 84.04 in that its single point on appeal contains multiple claims of error. In some cases, a brief may be so deficient that it precludes appellate review. Nicholson v. Transamerica Occidental Life Ins. Co., 144 S.W.3d 302, 305 (Mo. App. W.D. 2004). However, we prefer to dispose of a case on its merits rather than dismiss it for deficiencies in the brief. Lueker v. Mo. W. State Univ., 241 S.W.3d 865, 867 (Mo. App. W.D. 2008). Although O'Fallon's brief contains some deficiencies, it is not so deficient that it precludes our review.

Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. Crow v. Crawford & Co., 259 S.W.3d 104, 113 (Mo. App. E.D. 2008). The non-movant may not rest upon mere allegations and denials of the pleadings, but must use affidavits, depositions, answers to interrogatories, or admissions on file to show the existence of a genuine issue for trial. Id. "Facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion." Premier Golf Missouri, LLC v. Staley Land Co., LLC, 282 S.W.3d 866, 871 (Mo. App. W.D. 2009). We will affirm the trial court's judgment if it is sustainable on any theory. Citibrook, 239 S.W.3d at 634.

Discussion

Whether the Disputed Area Was
Annexed by Lake St. Louis in 1982

The central issue in this case is whether Lake St. Louis annexed the disputed area in 1982. This is resolved by determining whether the disputed area was included in the legal description in the recorded Annexation Judgment of 1982.

The legal description of the northern boundary in question in the Annexation Judgment provides as follows:

> …thence westwardly along the northern right-of-way line of Interstate Highway 70 to a point which is a perpendicular distance northwardly to the centerline of said Interstate Highway 70 from the intersection of the east right-of-way line of Lake Saint Louis Boulevard and the southern right-of-way line of Interstate Highway 70…

Because the legal description lacks metes and bounds, the question becomes what was meant by the phrase "northern right-of-way line of Interstate Highway 70." O'Fallon

6

contends this phase means the northernmost edge of the traffic lanes of Highway 70. Lake St. Louis asserts the right-of-way line is defined by the boundaries of the property that was owned by MoDOT.

Missouri statutes set forth the procedures for voluntary and involuntary annexations, Sections 71.012[2] and 71.015 respectively. In the Annexation Case, Lake St. Louis proceeded, and the Annexation Judgment was granted, pursuant to Section 71.015, commonly known as the Sawyer Act. A petition for involuntary annexation under Section 71.015 must describe the area sought to annexed. Section 71.015(2)(a); City of O'Fallon v. Bethman, 569 S.W.2d 295, 300 (Mo. App. 1978). This provision is designed to permit citizens and the court to identify the area proposed to be annexed. Bethman, 569 S.W.2d at 300; Young v. Mayor, Council & Citizens of City of Liberty, 531 S.W.2d 732, 737 (Mo. banc 1976). The statute does not require the description to take any particular form. Bethman, 569 S.W.2d at 300. The fact that professional training is required to verify the description does not render a petition's legal description insufficient. Bethman, 569 S.W.2d at 300. Nor does an imprecise legal description in a Section 71.015 petition necessarily invalidate a city's resolution to annex. See City of Cape Girardeau v. Armstrong, 417 S.W.2d 661, 673-74 (Mo. App. 1967) (omission in written legal description not fatal to city's annexation attempts where drafter of the legal description, a surveyor, explained oversight and legal description which relied upon MoDOT Highway plans and included "right-of-way line," "eastbound lane," "the end of said eastbound lane," and "westbound lane" as separate and distinct descriptions).

---

[2] All statutory references are to RSMo 2006, unless otherwise indicated.

Further, a description of a particular parcel of land is sufficient if a competent surveyor can locate the land on the ground. City of Parkville v. N. Farms, 950 S.W.2d 882, 887 (Mo. App. W.D. 1997).

> In general, any description in a deed is sufficient if it affords the means of identification of the property. 26 C.J.S. Deeds § 30, p. 640; Mathews v. O'Donnell, [233 S.W. 451, 457 [(Mo 1953)]. Extrinsic evidence is always admissible to explain boundary calls and to apply them to the subject matter and thus give effect to the deed. City of Warsaw v. Swearngin, [295 S.W.2d 174, 181 (Mo. 1956)]. "[A] court will declare a deed void for uncertainty of description only where, after resorting to oral proof or after relying upon other extrinsic or external proof or evidence, that which was intended by the instrument remains mere matter of conjecture, * * *." 26 C.J.S. Deeds § 30, pp. 644–645. [Mathews, 233 S.W. at 457]; Monroe v. Lyons, [98 S.W.2d 544, 547 (Mo. 1936)].

Hamburg Realty Co. v. Woods, 327 S.W.2d 138, 150 (Mo. 1959).

Here, the parties presented alternative theories of interpretation of the phrase "northern right-of-way line of Interstate Highway 70" in the Annexation Judgment's legal description. To support its position that the right-of-way line of Highway 70 extended beyond the pavement of the highway's northernmost lane, Lake St. Louis hired a surveyor to determine the boundaries of the legal description. In preparing the 2013 survey, Skornia used his "independent professional judgment to plot the northern boundary of the City of Lake St. Louis in accordance with the legal description set forth in the [Annexation Judgment]." Skornia attested that he researched the public records, identified the northern right-of-way line of Highway 70, and produced a survey and a metes and bounds description. The 2013 survey and legal description, which partially relied upon MoDOT's project plans for Highway 70, provided that the northern boundary of Lake St. Louis was the northern boundary of the disputed area and supported the conclusion that the disputed area was annexed by Lake St. Louis in 1982.

8

Although granted additional time to respond, O'Fallon did not submit a survey supporting its position that the "northern right-of-way line of Interstate Highway 70" should be interpreted to mean the northern edge of the traffic lane of Highway 70. As such, Lake St. Louis's assertion that the disputed area was annexed in 1982, as supported by Skornia's affidavit and the 2013 survey, is an undisputed material fact.

O'Fallon's contention that the 2013 survey should be discounted because the legal description that accompanied it does not match the legal description in the Annexation Judgment is without merit. Skornia's affidavit and the 2013 survey make clear that the survey plotting the northern boundary of Lake St. Louis was done in accordance with the legal description in the Annexation Judgment and the accompanying legal description was a metes and bounds description of the same property. O'Fallon failed to present any evidence disputing such.

Here, Skornia was able to accurately locate the land described in the Annexation Judgment using the legal description contained therein with the aid of public records. We find the legal description in the Annexation Judgment was sufficient to identify the area annexed by Lake St. Louis in 1982 with reasonable certainty and that Skornia identified the "northern right-of-way line of Interstate Highway 70" and Lake St. Louis's northern boundary as the northern boundary of the disputed area. O'Fallon has failed to demonstrate otherwise; thus, there was no genuine dispute that the area was annexed by Lake St. Louis in 1982.

9

<u>Whether O'Fallon's Subsequent Annexation</u>
<u>Attempts of the Disputed Territory Were Valid</u>

As already noted, Sections 71.012 and 71.015 set forth the procedures by which a municipality may annex territory. Both provisions explicitly limit annexation to "unincorporated areas." Sections 71.012[3] and 71.015.[4]

Although not of the same procedural posture, numerous cases of this Court have addressed the question of whether two municipalities can exercise jurisdiction over the same territory in competing annexation proceedings. Logically, more than one public entity cannot exercise jurisdiction over the same territory, giving rise to the doctrine of "prior jurisdiction," which provides that the municipality taking the first valid step toward annexation has priority over the territory, regardless of which municipality completes its proceedings first. <u>City of St. Joseph v. Village of Agency</u>, 223 S.W.3d 171, 174 (Mo. App. W.D. 2007); <u>Mayor, Councilmen & Citizens of City of Liberty v. Tindall</u>, 918 S.W.2d 361, 363 (Mo. App. W.D. 1996).

In this case, Lake St. Louis started annexation proceedings over the disputed territory in 1978 and completed the annexation process in 1982, 22 years before O'Fallon began annexation proceedings in 2005. By the plain language of the statute, O'Fallon could not annex the disputed area because it is not "unincorporated land."

---

[3] Section 71.012.1 provides, "Notwithstanding the provisions of sections 71.015 and 71.860 to 71.920, the governing body of any city, town or village may annex unincorporated areas which are contiguous and compact to the existing corporate limits of the city, town or village pursuant to this section."

[4] Section 71.015.1(1) provides as follows: "Before the governing body of any city, town, or village has adopted a resolution to annex any unincorporated area of land, such city, town, or village shall first as a condition precedent determine that the land to be annexed is contiguous to the existing city, town, or village limits and that the length of the contiguous boundary common to the existing city, town, or village limit and the proposed area to be annexed is at least fifteen percent of the length of the perimeter of the area proposed for annexation." Additional references to "unincorporated land" appear in Sections 71.015.1(5), (5)(c), (6); 71.015.3, (2).

Alternatively, O'Fallon argues Lake St. Louis should be prohibited from asserting jurisdiction over the disputed area by reason of acquiescence, estoppel, or waiver based upon Lake St. Louis's failure to improve infrastructure, zone, issue permits or licenses, or provide services to the area after its annexation. In support, O'Fallon cites to Randolph v. Moberly Hunting & Fishing Club, 15 S.W. 2d 834 (Mo. 1929); Weiss v. Alford, 267 S.W.3d 822 (Mo. App. E.D. 2008); and Town of Montevallo v. Village School District of Montevallo, 186 S.W. 1078 (Mo. banc 1916). These cases are distinguishable from the case *sub judice* as none involve the annexation of territory by a municipality. Weiss involved private property boundaries; Randolph analyzed the changing of county lines after a shift in the Missouri River 46 years earlier, which resulted in one county's abdication of its duties and another county's acceptance of those duties; and Town of Montevallo found a town was estopped from denying that property belonged to the school district when the district erected a school on the disputed property upon the town's authorization decades earlier. Even if it could be said that these cases were applicable, O'Fallon has failed to demonstrate a history of compelling bad acts or omissions by Lake St. Louis justifying the invocation of the equitable defenses of estoppel or waiver. Nor can it be said Lake St. Louis acquiesced to O'Fallon's assertion of jurisdiction, in that the undisputed statement of facts indicate O'Fallon began its attempts to annex the disputed area in 2005 and Lake St. Louis began contesting O'Fallon's right to do so shortly thereafter, culminating in Lake St. Louis filing the present action in 2009.

Furthermore, Sections 71.012[5] and 71.015[6] provide the statutory means by which territory may be deannexed, allowing a resident or property owner in the annexed area to

---

[5] Section 71.012.5 states, "Any action of any kind seeking to deannex from any city, town, or village any area annexed under this section, or seeking in any way to reverse, invalidate, set aside, or otherwise

bring suit within a limited period of time. The legislature could have allowed for broader rights for deannexation, yet chose these as the exclusive means.

Because the statutes unambiguously only allow a municipality to annex unincorporated areas and the disputed area was annexed by Lake St. Louis in 1982, O'Fallon's attempts to annex the territory were invalid. Lake St. Louis was entitled to judgment as a matter of law.

---

challenge such annexation or oust such city, town, or village from jurisdiction over such annexed area shall be brought within five years of the date of adoption of the annexation ordinance."
[6] Section 71.015 provides as follows:
…
2. Notwithstanding any provision of subsection 1 of this section, … if such city has not provided water and sewer service to such annexed area within three years of the effective date of the annexation, a cause of action shall lie for deannexation, unless the failure to provide such water and sewer service to the annexed area is made unreasonable by an act of God. The cause of action for deannexation may be filed in the circuit court by any resident of the annexed area who is presently residing in the area at the time of the filing of the suit and was a resident of the annexed area at the time the annexation became effective.
3…
(2) In the case of a proposed annexation of unincorporated territory in which no qualified electors reside, if at least a majority of the qualified electors voting on the proposition are in favor of the annexation, the city, town or village may proceed to annex the territory and no subsequent election shall be required.
If the proposal fails to receive the necessary separate majorities, no part of the area sought to be annexed may be the subject of any other proposal to annex for a period of two years from the date of such election, except that, during the two-year period, the owners of all fee interests of record in the area or any portion of the area may petition the city, town, or village for the annexation of the land owned by them pursuant to the procedures in section 71.012 or 71.014...Failure of the city, town or village to comply in providing services to the area or to zone in compliance with the plan of intent within three years after the effective date of the annexation, unless compliance is made unreasonable by an act of God, shall give rise to a cause of action for deannexation which may be filed in the circuit court not later than four years after the effective date of the annexation by any resident of the area who was residing in such area at the time the annexation became effective or by any nonresident owner of real property in such area.
4. Except for a cause of action for deannexation under subdivision (2) of subsection 3 of this section, any action of any kind seeking to deannex from any city, town, or village any area annexed under this section, or seeking in any way to reverse, invalidate, set aside, or otherwise challenge such annexation or oust such city, town, or village from jurisdiction over such annexed area shall be brought within five years of the date of the adoption of the annexation ordinance.

## Conclusion

The circuit court's judgment granting Lake St. Louis's Motion for Summary

Judgment and denying O'Fallon's Motion for Summary Judgment is affirmed.


_____
Sherri B. Sullivan, P.J.

Mary K. Hoff, J., and
Philip M. Hess, J., concur.

13