**Jerome L. HOWE, Jr., Appellant,**

v.

**ALD SERVICES, INC.,
et al., Respondent.**

No. 69235.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 11, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 20, 1997.

J. Patrick Chassaing, St. Louis, for appellant.

Barry S. Ginsburg, Clayton, for respondent.

RHODES RUSSELL, Judge.

Jerome Howe ("landlord") filed suit against ALD Services, Inc. ("tenant") and tenant's president, Alan Deutschmann, seeking damages for breach of a commercial lease. Tenant counterclaimed alleging damages as a result of landlord's failure to repair the roof and replace an air conditioning unit. The jury returned a verdict for landlord on his claim, awarding $2,500 in damages. The jury found for tenant on its counterclaim, awarding $500 in damages. The trial court overruled landlord's post-trial motions, including his motion for judgment notwithstanding the verdict, and entered judgments in accordance with the verdicts.

Landlord contends that the trial court erred in: 1) denying his motion for directed verdict and j.n.o.v.; 2) denying his motion for a mistrial and motion for a new trial because tenant improperly injected landlord's relationship with his attorney into the trial; 3) refusing to admit certified weather records; 4) refusing to allow his attorney to state in closing argument the law of accord and satisfaction; 5) admitting Exhibit M because it was prejudicial hearsay; and 6) submitting tenant's Instruction Number 10 to the jury. We affirm in part and reverse in part.

On January 11, 1988, landlord and Deutschmann entered into a commercial lease agreement for a warehouse in Fenton, Missouri for five years. In October 1988, tenant and landlord entered into another lease for an adjoining building. Tenant took possession of the property conducting a coin operated equipment distribution, sales and service business at the site.

During tenant's occupancy of the premises, it experienced recurring problems with a warehouse roof. Deutschmann testified that when it rained, the roof would leak causing damage to tenant's inventory. The roof was eventually repaired by landlord, however, the roof continued to occasionally leak when it rained.

In the summer of 1989, tenant began experiencing problems with the air conditioning in one of the warehouses. Deutschmann complained to landlord stating that the air conditioning system was not working properly. Landlord, however, attributed tenant's cooling problems to boxes of stuffed animals which tenant had stacked to the ceiling of the warehouse. Landlord concluded that the boxes of stuffed animals trapped the heat inside the warehouse. Due to the air conditioning problems, tenant experienced a higher turnover of employees during the summer months. The cost to tenant was approximately $4,000 to hire and retrain new employees.

Near the end of the tenancy, tenant and landlord agreed to extend the lease to April 30, 1993. After that date, however, the parties are in disagreement as to the terms. According to tenant, landlord agreed that tenant could remain on the premises for the month of May. Tenant later sent landlord a rent check for May in the amount of $3,190.

Landlord denied that he agreed to extend tenant's occupancy into May, and in fact, considered tenant to be a holdover. Landlord testified that he did not negotiate the May rent check because it contained the following language: "Final $ due Howe" and "Final notice and payment. Rent paid in full through May 31, 1993. We will be out on or before May 31, 1993." Landlord did not deposit the check because he did not know whether or not tenant owed him other money.

After tenant vacated the premises at the end of May, landlord inspected the property and discovered that a portion of the suspended ceiling of one of the warehouses had collapsed. Landlord testified that there was also damage to the front of the building where tenant had removed its exterior sign, there were lights that did not work, and that the carpeting, floors, and tiles were extremely filthy. Landlord estimated that it would cost $5,000 to $6,000 to repair the damages. Tenant denied responsibility for the damages.

Landlord eventually rented the premises to a new tenant. He testified that he had to rent the property for approximately $5,500 less than market value because of the damages to the property.

In August 1993 landlord filed suit in St. Louis County Circuit Court against tenant for breach of contract. Landlord alleged that tenant was a holdover for the month of May, and therefore, owed double rent. Landlord also sought compensation for the property damage and for lost rent. In response, tenant counterclaimed alleging that landlord breached the lease by failing to provide adequate air conditioning and by failing to maintain the structural integrity of the roof. Tenant requested that it be awarded damages for the loss to its inventory and for the expenses it incurred for the business interruption caused by landlord's breach of the lease.

The jury returned a verdict in favor of landlord's claim in the amount of $2,500 and in favor of tenant's counterclaim for $500.

Landlord's motion for j.n.o.v. or, in the alternative, a new trial was denied. This appeal follows.

For his first point, landlord contends the trial court erred in denying his motion for directed verdict and j.n.o.v. on tenant's counterclaim because the verdict was against the weight of the evidence and because he had no liability to tenant under the terms of the lease.

In reviewing the denial of a motion for a directed verdict and j.n.o.v., we must review the evidence in the light most favorable to the non-moving party and give that party all reasonable inferences from the evidence. *Resnik v. Blue Cross and Blue Shield,* 912 S.W.2d 567, 570 (Mo.App.1995). We ignore all evidence and inferences which contradict the non-movant's claim. A jury verdict will not be overturned unless there is a complete absence of probative facts to support it. *Id.*

To make a submissible case, substantial evidence must support every fact essential to liability. *Gateway Exteriors v. Suntide Homes,* 882 S.W.2d 275, 279 (Mo. App.1994). The evidence must establish every element necessary to recovery. *Id.* In order to make a submissible case of breach of contract, the complaining party must establish: 1) the existence of a valid contract; 2) the rights and obligations of the respective parties; 3) a breach; and 4) damages. *Rice v. West End Motors, Co.,* 905 S.W.2d 541 542, (Mo.App.1995).

Following these principles, we disregard the testimony of landlord, except to the extent it is favorable to tenant's claim. Under the terms of the lease, landlord was obligated to make and pay for structural repairs to the roof. Landlord was also obligated to replace the air conditioning mechanical units. Tenant testified that he notified landlord that the roof leaked shortly after taking possession of the property. Tenant testified that the roof continued to leak even after it was repaired, and his inventory was damaged as a result.

Tenant also experienced problems with the air conditioning units. The air conditioning units were barely able to keep the office ten degrees cooler than the outside temperature.

Tenant testified that he had sent a letter to landlord explaining that the air conditioning unit needed to be replaced. Due to the insufficient cooling system, tenant experienced a higher employee turnover rate. Deutschmann stated that it cost ALD approximately $4,000 to hire and train new employees. From this evidence, we conclude that tenant presented sufficient evidence to submit the issue of breach of contract to the jury.

Landlord, however, contends he is not liable for damages because paragraph XIV of the written lease agreement provides that "Lessor shall not be liable or responsible for any personal property of Lessee, their employee, customers or other invitees of Lessee." It appears that landlord is contending that this paragraph is an exculpatory or exoneration clause which absolves him from any responsibility for the damages resulting from his failure to repair the roof or replace the air conditioning unit.

Under Missouri law, covenants in leases that relieve the landlord of liability for condition, maintenance, or repair of the leased premises are valid. *Govero v. Standard Oil Company,* 192 F.2d 962, 964 (8th Cir.1951). Exculpatory clauses, however, are strictly construed. *Meyer Jewelry Co. v. Professional Bldg. Co.,* 307 S.W.2d 517, 521 (Mo.App.1957).

> An agreement, express or implied, which undertakes to decrease a landlord's obligation in regard to the condition of the leased premises, will be construed strictly against the landlord. In other words, the extent of the decrease will be kept in as narrow a range as is consistent with the terms of the agreement entered into by the parties.

*Mobil Oil Credit Corp. v. DST Realty, Inc.,* 689 S.W.2d 658 (Mo.App.1985) (quoting Restatement (Second) of Property § 5.6 cmt. d (1977)).

In construing the lease agreement, we follow the general rules of construction governing contracts. *Kamada v. RX Group Ltd.,* 639 S.W.2d 146, 148 (Mo.App.1982). Two basic principles for construing contracts are: 1) all provisions of a contract must, if

possible, be given effect[1], and 2) a contract should be given a reasonable construction.[2]

Here, the lease agreement specifically provided that landlord was to repair the roof and replace the air conditioning units. The lease, however, also provided that landlord was not responsible for tenant's personal property. The lease agreement can be construed to give effect to both the exculpatory clause and the covenants to repair by construing the exculpatory clause to exonerate landlord from liability for personal property, except for damages caused by his failure to repair the roof or replace the air conditioning unit. To hold otherwise, would render the covenants to repair meaningless. *See Parker v. Pulitzer Publishing Co.*, 882 S.W.2d 245, 250 (Mo.App.1994).

Furthermore, the lease agreement did not expressly relieve landlord from liability for failing to make the agreed upon repairs. The exculpatory clause was written in general terms and expressed nothing about landlord being relieved from liability resulting from his duties of repair specifically set forth in the lease. Furthermore, the lease did not expressly relieve landlord from damage for interrupting tenant's business. *See Zaharopoulos v. Sprenger*, 605 S.W.2d 143, 147 (Mo. App.1980)(lease provision that lessor would not be liable for damage to lessee's property caused by leaking water pipes did not bar lessee from seeking lost profits).

We find that since the lease agreement did not expressly relieve landlord from damages resulting from his duty to repair, it did not bar tenant's claim for damages. The trial court did not err in denying landlord's motion for directed verdict or j.n.o.v. on tenant's counterclaim.

Landlord also asserts in his first point that the jury's verdict for his breach of contract claim was against the weight of the evidence because it provided inadequate damages. Landlord contends that the jury's verdict in the amount of $2,500 was not supported by the evidence because it was undisputed that tenant at least owed $3,190 for May's regular rent. Landlord contends that even if the jury did not find tenant to be a holdover for the month of May, and therefore, did not owe $6,380 in double rent, tenant still owed $3,190 for May. Landlord argues that the verdict of $2,500 could not represent damages for rent, but only damages to the premises. It appears that landlord is arguing that the trial court erred in denying his motion for a new trial based upon inadequate damages.

The amount of damages awarded to a successful party is primarily for the jury, and its broad discretion in fixing the amount is conclusive on appeal, especially where the verdict has approval of the trial court as evidenced by its overruling a motion for a new trial. *La Martina v. Hannah*, 675 S.W.2d 444, 447 (Mo.App.1984). Before a jury verdict for damages will be set aside or adjusted, the jury's assessment of damages must be so shockingly meager as to indicate it resulted from arbitrary or prejudicial exercise of discretion. *Roark Motor Lodge Interval Sales Corp. v. Lindner*, 779 S.W.2d 684, 686 (Mo.App.1989).

A trial court weighs the evidence to assess the contention of a motion for new trial based upon inadequate damages. *Denney v. Milgram Food Stores, Inc.*, 614 S.W.2d 323, 324 (Mo.App.1981). The appellate court only determines whether there was substantial evidence to support the verdict. If there is substantial evidence to support the verdict, the trial court did not abuse its discretion in refusing the motion for a new trial. In determining adequacy of damages, there is substantial evidence to support the verdict where the award is responsive to the proof. *Id.* at 325. If the damages were returned on any rational assessment of the evidence, the trial court's discretion to deny a new trial was properly exercised, and the judgment will be sustained on appeal. *Id.*

Landlord attempted to prove at trial that he was entitled to $6,380 because tenant was a holdover for May. Landlord also presented evidence that it would cost him approximately $5,000 to $6,000 to repair the damages to the premises. Tenant disputed the fact that

**1.** *Mews v. Charlie Chan Publishing Co.*, 884 S.W.2d 109, 111 (Mo.App.1994).

**2.** *21 West v. Meadowgreen Trails*, 913 S.W.2d 858, 880 (Mo.App.1995).

it was a holdover and denied it was responsible for the damages to the property. Tenant also stated that it had paid the rent for the month of May and that landlord had possession of the check.

Landlord's verdict director, Instruction Number 7, required the jury to find the following:

Your verdict must be for plaintiff if you believe:

First, defendant A.L.D. Services, Inc. did not pay in a timely manner, did not tender possession of the premises to plaintiff at the termination of the tenancy, or did not return the premises to plaintiff in the same condition the premises were in at the commencement of the tenancy, except normal wear and tear, and

Second, because of such failure, defendant A.L.D. Services, Inc.'s contract obligations were not performed and defendant Alan Deutschmann's guarantee was not satisfied, and

Third, plaintiff was thereby damaged.

■ Despite landlord's contention, the jury was not required under Instruction Number 7 to find that tenant owed double rent or regular rent. Under the terms of the instruction, the jury could have found tenant liable on the sole issue that tenant did not return the premises in the same condition the premises were in at the commencement of the tenancy. Thus, the jury's verdict for $2,500 could have represented the jury's assessment of the landlord's claim for damages to his property.

The jury is given broad discretion in determining the appropriate amount of damages to award. *Strycharz v. Barlow*, 904 S.W.2d 419, 427 (Mo.App.1995). There was conflicting testimony regarding the nature of the damages. Although tenant did not present its own repair estimates, it asserted that the premises were in disrepair when the lease began in 1988. The jury was in the better position to assess the proper amount of damages.

Furthermore, there was evidence that landlord was still holding a $2,500 security deposit in an escrow account. The $2,500 security deposit and the $2,500 verdict returned by the jury approximates the damages landlord was seeking for the damages to the premises.

In light of the discretion in which the jury is invested in determining damages and the disputed amount of damages, we cannot conclude that the verdict was inadequate nor that the trial court erred in denying landlord's motion for a new trial.

Landlord also argues that he was entitled to attorney fees and interest under the lease agreement. Landlord contends the trial court erred in denying his post-trial motions by refusing to award him attorney's fees and interest.

The lease clearly provided for landlord to recover attorney's fees for any action under the lease. Paragraph 5 of the Second Addendum to the lease provided:

Should either party deem it necessary to retain the services of an attorney in order to enforce his/its rights under the lease, then the party which prevails in said controversy shall be paid by his/its opponent all cost and expenses therein, including reasonable attorney fees.

■ Landlord presented evidence that his attorney's fees were $10,867.32. Tenant's counsel conceded that the attorney's fees were reasonable.[3] If a contract provides for the payment of attorney's fees in the enforcement of a contract provision, the trial court must award them to the prevailing party. *Schnucks v. Bridgeton Health and Fitness*, 884 S.W.2d 733, 739 (Mo.App.1994). The trial court may determine attorney's fees in jury-tried cases if the attorney's fees are awardable as a "matter of law." *See Campbell v. Kelley*, 719 S.W.2d 769 (Mo. banc 1986). Once the jury found for landlord on his breach of contract claim, he was entitled to attorney's fees as a matter of law. On remand, the trial court is directed to assess and award landlord reasonable attorney's fees.

3. Tenant requested attorney's fees at trial. The jury did not award tenant any attorney's fees on its counterclaim. Tenant, however, did not appeal that issue.

Landlord also argues that the trial court erred in denying him judgment for interest at 18.0% as provided by the lease. Tenant contends that landlord is not entitled to interest because landlord failed to present the issue of prejudgment interest to the jury.

■ It does not appear that landlord submitted the issue of interest in his instructions that he provided in his record on appeal. Furthermore, it does not appear that landlord argued the issue of interest to the jury. A claim for prejudgment interest neither argued nor submitted to the jury cannot be raised by post verdict motion. *Graham v. Goodman,* 850 S.W.2d 351, 356 (Mo. banc 1993). The trial court did not err in refusing to award interest to landlord.

In his second point, landlord argues that the trial court erred in denying his motion for a mistrial and for a new trial because tenant's attorney improperly injected landlord's relationship with his attorney into the trial.

At trial, James Howe, landlord's son, was asked by tenant's attorney how he was related to his counsel. James Howe responded that his attorney was his brother-in-law. Landlord's attorney then objected and requested a mistrial arguing that commenting on a relationship between an attorney and his client was improper. Landlord's attorney alternatively requested that the court instruct the jury to disregard the question and answer. The court denied the motion of a mistrial, but instructed the jury to disregard the question and answer.

■ The decision to grant a mistrial lies in the sound discretion of the trial court and an appellate court will not disturb the trial court's decision absent abuse of discretion. *Pierce v. Platte–Clay Electric Cooperative, Inc.,* 769 S.W.2d 769, 778 (Mo. banc 1989). Similarly, broad discretion is vested in the trial court in ruling on motions for new trial. *Gilman v. Gilman,* 851 S.W.2d 15, 19 (Mo.App.1993).

■ Here, landlord argues that tenant's attorney asked the question how his son was related to the attorney to engender prejudice against him. To demonstrate such prejudice, landlord presents the affidavit of a juror who attested that he and the other jurors did not disregard the relationship between landlord and his attorney as instructed by the court.

■ It is, however, a well-established rule that the affidavit of a juror is inadmissible for the purpose of impeaching a jury verdict. *Wingate v. Lester E. Cox Medical Ctr.,* 853 S.W.2d 912, 916 (Mo. banc 1993). Thus, we cannot consider the affidavit.

After examining the record, we find the trial court did not abuse its discretion in refusing to grant a mistrial or landlord's motion for a new trial. Although counsel's question regarding Howe's relationship with his attorney may have been improper, it was not manifestly inflammatory nor prejudicial that a mistrial was required. The trial court is in a better position to assess the prejudicial effect of the attorney's question. Point two is denied.

In his third point, landlord asserts the trial court erred in refusing to admit Exhibit 21, a copy of certified weather records, into evidence. Landlord contends that the weather records were essential in order to impeach tenant's claim that the warehouse ceiling had collapsed due to a gust of wind.

During cross-examination, tenant testified that it was a very windy day when the ceiling collapsed. Tenant further stated that the door to the warehouse blew open and then a ceiling fixture fell down on top of his receptionist's desk. At this point, landlord attempted to offer certified weather records collected by the U.S. Department of Commerce showing that on the day the ceiling collapsed, the highest wind speed was eleven miles per hour. Tenant objected to the admission of the records on the grounds that the records were irrelevant because the records were not taken in Fenton. The trial court sustained tenant's objection.

■ The determination of whether proffered evidence is relevant is within the sound discretion of the trial court. *Weatherly v. Miskle,* 655 S.W.2d 842, 844 (Mo.App. 1983). Government weather records have been held to be relevant even though the records were ascertained some 65 to 70 miles from the site in dispute. *Schucker v. Mis-*

*souri Department of Natural Resources,* 703 S.W.2d 1, 4 (Mo.App.1985).

■ Where evidence is excluded, the issue is whether the trial court abused its discretion, not whether the evidence was admissible. *Copeland v. Mr. B's Pool Centers, Inc.,* 850 S.W.2d 380, 381 (Mo.App.1993). We defer to the trial court because of its superior opportunity to evaluate the proffered evidence in the context of the trial. *Id.* Furthermore, the refusal to admit evidence does not constitute reversible error unless it would have changed the result. *Green v. Stanfill,* 641 S.W.2d 490 (Mo.App.1982).

Section 490.220, RSMo 1994 governs the admissibility of United States government records. Section 490.220 provides:

All records and exemplifications of office books, kept in any public office of the United States, or of a sister state, not appertaining to a court, shall be evidence in this state, if attested by the keeper of said record or books, and the seal of his office, if there be a seal.

The records at issue contain the seal of the United States Department of Commerce. The records were attested to by the records custodian of the National Climate Data Center. The weather records were admissible under the requirements of § 490.220. However, failure to admit the weather records does not mandate a reversal of a judgment by the trial court unless the error materially affected the merits of the action. Rule 84.13(b); *Hefele v. National Super Markets Inc.,* 748 S.W.2d 800, 804 (Mo.App.1988).

■ Exhibit 21 was a copy of meteorological records of wind speeds for St. Louis for May 21, 1993. Landlord contends that the weather records were essential in order to impeach tenant's credibility. Tenant, however, did not directly testify that the ceiling collapse was caused by high winds. Furthermore, the records contained data compiled at a St. Louis weather station. Although Fenton, Missouri is located near St. Louis, the wind speed data contained in the weather records would not necessarily reflect the wind conditions at Fenton. Even if the trial court had erred in refusing to admit the weather records, we conclude the exclusion

of the records did not materially affect the merits of the action. Point denied.

For his fourth point, landlord contends that the trial court erred in refusing to allow his attorney to state in closing argument the law of accord and satisfaction. Landlord asserts that it was essential for his attorney to explain the law of accord and satisfaction in order to account for why he did not negotiate tenant's rent check for May.

During closing argument, landlord's attorney began to explain to the jury the law of accord and satisfaction. Tenant's attorney objected that landlord's attorney was arguing the law to the jury. The trial court sustained the objection.

■ The regulation of closing argument rests largely within the sound discretion of the trial court. *Lewis v. Vermont American Corp.,* 870 S.W.2d 909, 914 (Mo. App.1994). The trial court has broad discretion in the area of the closing argument, not lightly to be disturbed by an appellate court. *Id.*

■ The trial court's ruling prevented tenant's counsel from stating the law of accord and satisfaction as it existed in Missouri. The court's ruling, however, did not prohibit the attorney from arguing the effect of negotiating the check, albeit without specific reference to Missouri law. We find no abuse of discretion. Point four is denied.

For his fifth point, landlord asserts the trial court erred in admitting Exhibit M because it was inadmissible hearsay. Exhibit M was a letter from tenant to landlord in which tenant explained to landlord that he had breached the contract by failing to repair the air conditioning unit. In the letter, tenant explained that the office was unfit for his employees many days of the year. The letter also contained the statement, "I want to point out to you that your own man in writing explains that the air-conditioning unit is not even good enough to lower the temperature 10 degrees."

■ Landlord's attorney made a hearsay objection to this letter at trial. The admission of evidence claimed to be hearsay is reversible error only if the complaining

party is prejudiced. *Dunn v. St. Louis–San Francisco Ry. Co.*, 621 S.W.2d 245, 252 (Mo. banc 1981). The complaining party cannot be prejudiced if that party offers evidence to the same effect as the challenged evidence, or if the challenged evidence is merely cumulative to other admitted evidence of like tenor. *Id.* The burden is on the complaining party to establish prejudice. *Nettie's Flower Garden v. SIS Inc.*, 869 S.W.2d 226, 230 (Mo.App.1993). We need not decide whether or not the letter is hearsay because the admission of this evidence, even if hearsay, could not result in reversible error.

Before the admission of Exhibit M, landlord offered evidence calling an air conditioning repairman to testify. The repairman testified on direct examination that he had responded to a call from tenant that the air conditioning system was not working properly. The repairman testified that the air conditioning unit "was barely able to keep the office 10 degrees cooler than the outside temperature." Thus, landlord's own witness testified to matters which he now complains were hearsay. Accordingly, the admission of Exhibit M, which contained evidence to the same effect as landlord's witness, could not have prejudiced him. Point five is denied.

Landlord's sixth and final point maintains that the trial court erred in submitting ALD's Instruction Number 10 to the jury. Landlord contends that Instruction Number 10 should have been patterned after MAI 26.02 rather than MAI 26.06.

Instruction Number 10 is not furnished to us in the legal file and appears only in the argument section of landlord's brief. It is not in the record on appeal, the legal file, nor within landlord's motion for j.n.o.v. or, in the alternative, motion for a new trial. Because our review is limited to matters contained in the record, it would be improper for us to review Instruction Number 10 for alleged error. *Ridley v. Newsome*, 754 S.W.2d 912, 916 (Mo.App.1988); *See Also, State ex. rel. Highway Commission v. Baumhoff,* 230 Mo.App. 1030, 93 S.W.2d 104, 107 (1936). Point six is denied.

The trial court's judgment on tenant's counterclaim is affirmed. The trial court's judgment on landlord's damage claim for $2,500 is reversed only to the extent of attorney's fees, and the cause is remanded for the purpose of assessing landlord's reasonable attorney fees. In all other respects the judgment is affirmed.

SIMON, J., concurs.

KAROHL, J., dissents.