CITY OF ROLLA, Missouri, Plaintiff–Respondent,

v.

Bassen ARMALY, et al., Defendants–Appellants.

No. 22154.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 11, 1999.

Colin P. Long, Smith Dunbar Turley, Waynesville, for appellants.

John D. Beger, Beger & Bushie, Rolla, for respondent.

KENNETH W. SHRUM, Presiding Judge.

This appeal is from a declaratory judgment that authorized the City of Rolla ("Rolla") to proceed with involuntary annexation of 1,352 acres ("Southside Area") lying south of its existing limits. Appellants are some of the residents of the Southside Area opposed to Rolla's plan for annexation.

Because the proposed annexation met with objection, Rolla proceeded under Missouri's involuntary annexation statute, § 71.015. RSMo 1994.[1] Involuntary annexation is accomplished in steps, several of which are relevant to this appeal. First, even before adopting a resolution of intent to annex, a city must "as a condition precedent determine that" the area proposed for annexation "is contiguous to the existing city ... limits and that the length of the contiguous boundary common to the existing city limits ... and the proposed area to be annexed is at least fifteen percent of the length of the perimeter of the area proposed for annexation." § 71.015.1(1). Second, the city must prepare a proposed ordinance setting forth, *inter alia*, (a) the area to be annexed and affirmatively stating that its boundaries meet the contiguousness requirement of § 71.015.1(1); (b) that the annexation is reasonable and necessary to the proper development of the city; and (c) that the city has developed a Plan of Intent to provide services to the area proposed for annexation. § 71.015.1(2). Third, the city must present the proposed ordinance and Plan of Intent, including evidence supporting it, at a public hearing. § 71.015.1(3)-(4). Fourth, following the hearing, if the governing body adopts the ordinance to annex, the city must obtain judicial approval of the proposed action via a declaratory judgment action in which the city must plead and prove (a) what area is to be annexed and its conformity with the contiguousness requirement of § 71.015.1(1); (b) that the annexation is reasonable and necessary to the proper development of the city; and (c) the ability of the city to furnish the annexed area with normal municipal services within a reasonable time, not to exceed three years after the annexation is to become effective. *See* § 71.015.1(5).[2]

In seven points relied on, Appellants charge that the trial court committed reversible error by approving Rolla's annexation because (1) absent evidence erroneously ad-

---

1. All statute references are to RSMo 1996 unless otherwise indicated.

2. The final stage of the annexation process, in which the question of annexation is submitted to the voters (§ 71.015.1(6)), is not an issue here.

mitted by the trial court, Rolla failed to produce either sufficient evidence of contiguousness or an adequate legal description of the Southside Area; (2) Rolla's plan for furnishing municipal services to the Southside Area was too speculative; (3) the trial court lacked subject matter jurisdiction because Rolla adopted new ordinances and Plans of Intent after the declaratory judgment suit was filed; and (4) Rolla produced insufficient evidence to establish that the reasonableness and necessity of the proposed annexation were "fairly debatable." We disagree and affirm the judgment.

## STANDARDS OF REVIEW

 The standards of review applicable in involuntary annexation cases are well settled:

"When we review the decision to annex, we examine whether there is substantial evidence that the reasonableness and necessity of the annexation are fairly debatable. Both the City and the residents of the area to be annexed are entitled to the benefit of this test of reasonableness. Neither the trial court nor this court may substitute its judgment or discretion for that of a city's legislative body. There is no burden of proof in annexation cases, only a burden of proceeding with the evidence. If there is substantial evidence supporting both sides of the issue, deference must be given to the City's judgment. Our inquiry is thus limited to whether the action of the City was arbitrary and completely unreasonable. There are no fixed rules to follow in applying the general test; each such case must be decided upon its own set of unique facts." (Citations omitted.)

*City of Parkville v. Northern Farms*, 950 S.W.2d 882, 885[1–4] (Mo.App.1997).

## FACTUAL AND PROCEDURAL HISTORY

The Southside Area lies generally south of Rolla's corporate limits, north of Phelps County road 5020, west of State Highway 72, and east of U.S. Highway 63 and a subdivision named Parkview. Four residential subdivisions occupy approximately 200 acres of the Southside Area, while some 796.87 acres thereof are suitable and available for development.

Rolla first considered annexing this area in the early 1990s after several citizens groups from the subdivisions expressed an interest in annexation. In part, the prospect of annexation arose due to water, sewer, and environmental concerns in the four existing subdivisions.

After Rolla determined that it had the ability to provide services to the Southside Area and needed the land for future development, its public works staff prepared a legal description for the area. In preparing the description, Rolla did not "hire a surveyor to go out and survey this entire boundary line." The description was derived from "existing subdivision boundaries, which had been surveyed, existing deeds at the county courthouse, and also recognized land lines, such as public-right-of-way and quarter-quarter sections, that sort of thing."

On May 22, 1995, Rolla presented its first proposed ordinance and Plan of Intent for annexation of the Southside Area at a public hearing. Later that day, Rolla passed the proposed ordinance. On September 15, 1995, Rolla filed this declaratory judgment action pursuant to § 71.015.1(5).

After filing this action, Rolla revised its Plan of Intent and proposed a new ordinance for the Southside Area annexation. After conducting another public hearing, at which Rolla presented its revised plan and proposed ordinance, on November 26, 1996, Rolla passed the new ordinance approving its revised Plan of Intent. Rolla then moved to amend its declaratory judgment petition. Believing the procedures prescribed by § 71.015.1 must be followed sequentially, the trial court initially denied Rolla's motion. Rolla then filed a motion to reconsider based, in large measure, on the western district's holding in *City of Lake Winnebago v. Gosewisch*, 932 S.W.2d 840 (Mo.App.1996). Relying on *Gosewisch*, the trial court subsequently granted Rolla leave to amend its petition and specifically found that it would not be deprived of jurisdiction thereby. Thereafter, Appellants filed motions to dismiss for lack of subject matter jurisdiction and for failure to

state a claim upon which relief could be granted. The trial court overruled Appellants' motions.

Subsequently, Rolla again revised its Plan of Intent and proposed another ordinance of annexation and presented them at a public hearing held October 6, 1997. It then passed the proposed ordinance approving the second revised Plan of Intent. The new ordinance expressly repealed the November 26, 1996, ordinance of annexation. Appellants again filed a motion to dismiss for want of subject matter jurisdiction and failure to state a claim upon which relief could be granted. Before the trial court ruled on Appellants' motion, Rolla moved to amend its petition by interlineation. The trial court again overruled Appellants' motion.

The parties tried the case on January 5, 1998. On January 20, 1998, the trial court entered its judgment approving Rolla's annexation of the Southside Area. This appeal followed.

We recite additional facts in our discussion where relevant to our analysis of Appellants' claims of error.

## DISCUSSION AND DECISION

*Point I: Alleged Error Regarding Testimony of Contiguousness*

■ Appellants' first point charges that the trial court committed reversible error when it overruled their objection to testimony by Thomas Hosmer, Rolla's planning director, regarding the contiguousness of the Southside Area to Rolla's existing city limits. Appellants complain that Hosmer should not have been allowed to testify that the perimeter of the Southside Area is 60,491.58 feet long, that the length of the Southside Area common to and contiguous with the existing city limits is 30,714.23 feet, and that the length of the Southside Area boundary contiguous with the existing corporate limits is at least fifteen percent of the length of the

perimeter of the Southside Area. Appellants insist that Hosmer's testimony on this subject was based on hearsay, not personal knowledge, and should, therefore, have been excluded.

■ "The admission of evidence claimed to be hearsay is reversible error only if the complaining party is prejudiced." *Howe v. ALD Services, Inc.*, 941 S.W.2d 645, 654–655[34] (Mo.App.1997). Appellants, here, claim they were prejudiced because "[a]bsent this erroneously entered hearsay testimony of Mr. Hosmer there existed absolutely no evidence of how much of the annexed land was contiguous to the Rolla city limit." Appellants correctly point out that before a city can involuntarily annex an area, it must "first as a condition precedent determine that the land to be annexed" conforms to the contiguousness requirement of § 71.015.1(1). Appellants insist that if Hosmer's testimony on this subject had been excluded, Rolla would have failed to prove its compliance with and the Southside Area's conformance to the condition precedent of § 71.015.1(1). Thus, Appellants assert that the trial court should not have approved the annexation. We disagree.

■ "The complaining party cannot be prejudiced ... if the challenged evidence is merely cumulative to other admitted evidence of like tenor." *Howe*, 941 S.W.2d at 655[34]. Here, Rolla presented other evidence of the Southside Area's contiguousness when, at the beginning of trial, it placed into evidence its final ordinance of annexation, which contains Rolla's legal description of the Southside Area.[3] Virtually every call of the legal description includes a distance. When all of the distances contained in the legal description are added, they total 60,491.58 feet. The legal description also recites which calls in the description are contiguous to Rolla's existing city limits. When the distances associated with these calls are added, they total 30,714.23 feet.[4] These calculations involve nothing more than simple addition.

3. We do not ignore Appellants' argument that the legal description of the Southside Area offered by the City was insufficient. We address and reject this argument in our discussion of Appellants' Point II, below.

4. We note that the distances associated with two of the calls included in this total are not actually contiguous to Rolla's existing city limits. Rolla's legal description of the Southside Area contains descriptions of two adjoining parcels. These two parcels are contiguous to each other—and not

We find that the legal description, itself, is competent evidence that the Southside Area conforms with the contiguousness requirement of § 71.015.1(1). As a result, we need not decide whether Hosmer's testimony on this subject was inadmissible hearsay because even if that portion of his testimony was erroneously admitted, it is not a reversible error. *Howe,* 941 S.W.2d at 655[34]. Appellants' first point is denied.

*Point II: Admissibility of Legal Description and Need For Survey*

■ We reproduce Appellants' second point in its entirety:

"THE TRIAL COURT ERRED IN ITS CONCLUSION OF LAW THAT THE AREA TO BE ANNEXED CONFORMED WITH THE CONDITIONS PRECEDENT IN [§ ] 71.015.1(5) AND THAT [ROLLA] STATED FACTS SHOWING THE AREA TO BE ANNEXED BECAUSE [ROLLA] FAILED TO PRODUCE ANY ADMISSIBLE EVIDENCE SHOWING ITS COMPLIANCE WITH THE CONDITIONS PRECEDENT TO FILING DECLARATORY JUDGMENT AS WELL AS THE AREA TO BE ANNEXED WHICH IS IN VIOLATION OF SECTION 71.015 THAT MANDATES THAT [ROLLA] MUST SHOW FACTS OF THE AREA TO BE ANNEXED AND ITS CONFORMITY WITH THE CONDITION PRECEDENT REFERRED TO IN SUBDIVISION 1 OF SECTION 71.015."

Try though we have, we cannot discern from this point precisely what Appellants are complaining about. In the argument portion of their brief, Appellants attack the evidence Rolla adduced at trial regarding the legal description of the Southside Area. To the extent that Appellants challenge the admissibility of Rolla's legal description as contained in its ordinance, their argument is without merit for two reasons.

■ First, Appellants failed to preserve any claim of error regarding the admission of Rolla's ordinance of annexation, which contains the Southside Area legal description. When Rolla's lawyer offered the ordinance into evidence at the beginning of trial, Appellants' counsel responded, "Your Honor, with regards to [that] exhibit[ ], the only objection I'd have is basically we're not conceding with regards to the legal description or that the ordinance ... [is] in the proper form." When nothing further was said to clarify this objection, the trial court admitted the proffered exhibits. Thus, the legal description was in evidence from the beginning of the trial. The objection made by Appellants' counsel was not sufficiently clear and definite to enable the trial court to understand the reason for the objection. *See Lasley v. Director of Revenue,* 954 S.W.2d 327, 331[5] (Mo.banc 1997). An objection that embraces a broad range of situations that are not readily apparent does not preserve a claim of error. *Id.* at 331. Such was Appellants' objection here.

■ Second, Appellants appear to believe that Rolla had to physically survey the land to ensure that its description accurately depicted the property purportedly described. Appellants primarily base their belief, and their argument, on cases that state, " 'A description of a particular parcel is sufficient if a competent surveyor can locate the land on the ground.' " *Northern Farms,* 950 S.W.2d at 887 (quoting *Weber v. Johannes,* 673 S.W.2d 454, 458 (Mo.App.1984)). According to Appellants, these cases require a party to physically survey the land purportedly described in a legal description. We disagree for several reasons. First, the statute contains no such requirement. Second, we interpret the cases cited by Appellants as meaning only that the description must be such that a competent surveyor *could* locate the described parcel on the ground, not that a surveyor must actually do so. *See e.g., Northern Farms,* 950 S.W.2d at 887. Third, Appellants have not shown any prejudice arising from Rolla's legal description. "[I]n order to deny a city the authority to annex because of a procedural violation, prejudice must be demonstrated." *Id.* at 886[5]. Appellants do not claim that they are uncertain

Rolla's existing city limits—for a distance of approximately 285 feet. Thus, the actual distance of contiguousness should be reduced 285 feet for

each parcel, or 570 feet in total. Nevertheless, this mistake is negligible to the overall percentage of contiguousness.

or confused about what area is sought to be annexed, nor do they make any other claim of prejudice. Fourth, Appellants' argument overlooks the fact that Rolla does not bear a particular burden of proof here, it simply bears a burden of proceeding with the evidence. *Northern Farms*, 950 S.W.2d at 885[3]. Rolla met its burden of proceeding with the evidence here by introducing the Southside Area's legal description, which showed the area to be annexed and its conformity with the statute's requirement of contiguousness. Appellants have made no showing that the description was, in any respect, insufficient or uncertain. Consequently, Appellants have failed to proceed with any evidence on this matter.

Based on our examination of Rolla's legal description of the Southside Area, we believe a competent surveyor could locate the land therein described on the ground. Consequently, the description is sufficient. *Northern Farms*, 950 S.W.2d at 887. Point II is denied.[5]

*Point III: Alleged Inability to Provide Services*

Appellants' third claim of trial court error reads:

"III. THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT [ROLLA] HAS THE ABILITY TO FURNISH NORMAL MUNICIPAL SERVICES WITHIN A REASONABLE TIME, NOT TO EXCEED THREE YEARS BECAUSE [ROLLA] FAILED TO PROVE THAT IT CAN PROVIDE NORMAL MUNICIPAL SERVICES WITHIN THREE YEARS OF THE ANNEXATION DATE WHEN THE EVIDENCE SUBMITTED SHOWS THAT [ROLLA'S] PLAN TO FURNISH THESE SERVICES IS BASED ON SPECULATIVE METHODS OF FUNDING SUCH AS (1) THE PASSAGE BY

THE ELECTORATE OF NEIGHBORHOOD IMPROVEMENT DISTRICT; (2) THE PASSAGE BY THE ELECTORATE OF A REVENUE BOND; OR (3) THAT THE OWNER MUST PETITION FOR SERVICES WHEN THE STATUTE MANDATES THAT [ROLLA] MUST SHOW IT HAS THE PRESENT ABILITY TO FURNISH NORMAL MUNICIPAL SERVICES NOT THAT THE PROVISION OF SERVICES WILL BE CONTINGENT UPON PASSAGE BY THE VOTERS."

Many cases emphasize the importance of financial planning to the § 71.015 annexation process. *See City of Pacific v. Metro Dev. Corp.*, 922 S.W.2d 59 (Mo.App. 1996); *City of Cape Girardeau v. Frank*, 637 S.W.2d 786 (Mo.App.1982); *City of Farmington v. McClard*, 437 S.W.2d 114 (Mo.App. 1969). A city must show not only the "technical" ability (equipment, materials, and manpower) to provide normal municipal services but also the financial ability to provide such services. *Metro Dev. Corp.*, 922 S.W.2d at 64[8]. When deciding whether it can provide normal municipal services, a city must conduct a thorough investigation of its financial resources and ability. *Frank*, 637 S.W.2d at 788[4]. It must identify resources that will be available to fund the furnishing of services to the annexed area, and the availability of funding cannot be so speculative and uncertain "that any finding as to [its] probability would be mere guesswork." *McClard*, 437 S.W.2d at 121.

On its face, Appellants' third point appears to complain about Rolla's proposed funding for *all* municipal services, but the only two municipal services about which Appellants specifically complain in their argument are water and sewer services. Claims of error asserted in a point relied on but not developed in the argument portion of

---

5. We have not ignored *Cashion v. Meredith*, 333 Mo. 970, 64 S.W.2d 670 (1933), in which our supreme court held that the trial court did not err in excluding legal descriptions where there was no evidence that the descriptions' boundary lines had been "ascertained on the ground" or surveyed. However, *Cashion* was a suit for ejectment and involved questions of adverse possession. It was in that context that the *Cashion*

court said, "The descriptions in the first two ... deeds offered refer to corners and fences of other proprietors. Such descriptions necessarily require evidence aliunde to eke them out." *Id.* at 673. Rolla's description does not refer to fences or other indefinite monuments. No possession issues are involved. The foregoing principles stated in *Cashion*, although sound, are inapplicable here.

a brief are deemed abandoned. *Glidewell v. S.C. Management, Inc.*, 923 S.W.2d 940, 956[25] (Mo.App.1996). Accordingly, we confine our analysis to Appellants' claims that Rolla's proof of its financial ability to furnish water and sewer services to the Southside Area was too speculative to support the judgment.[6]

Rolla's plan is to fund the installation of water services by requiring each resident to pay 100 percent of the cost per lineal foot of the water main running across the resident's property. When water mains must be extended across or along a non-user's property, however, Rolla's plan is to fund such extensions from its reserves. Rolla also plans to pay for fire hydrants from its reserves. As to sewers, Rolla's plan is to extend service on a cost-share basis with residents such that Rolla and a resident each will pay fifty percent of the costs of running the sewer line *to* the resident's property. For both sewer and water services, each resident would pay 100 percent of the cost of installing water and sewer service lines from the resident's home to connect with Rolla's main water and sewer lines. Rolla's employees testified that these terms are no different from those extended to current municipal residents who petition for water and sewer services.

Rolla has identified three means by which residents might pay their share of the installation costs. First, residents could form a neighborhood improvement district. The evidence showed that, if residents did form a neighborhood improvement district, Rolla might be eligible to receive low-interest loans from the Missouri Department of Natural Resources to help finance the annexed residents' costs, but only for the four existing subdivisions. Second, voters could pass a bond issue to finance the annexed residents' costs. Third, annexed residents could make their own arrangements to pay the costs. Appellants argue that these proposed means of funding the residents' share of these costs are too speculative to support the trial court's finding that Rolla can provide munici-

pal services to the proposed annexed area within three years. We do not disagree that these sources are somewhat speculative and uncertain, but that does not bear on the issue of whether *Rolla* is presently financially able to provide services.

■ Appellants' argument rests on the faulty assumption that Rolla bears the burden of showing that the *residents* are financially able to pay their share of the costs of installing water and sewer services. The statute requires that Rolla show "[t]he ability of the *city* . . . to furnish *normal municipal services of the city.*" § 71.015.1(5)(c) (emphasis added). "The city is not required to show some theoretically desirable level of city services to be furnished, but rather all that it must prove is that it will be in a position within a reasonable time to furnish to the annexed area *the same level of municipal services which it is currently furnishing to its existing populace.*" *City of Butler v. Kuecker*, 559 S.W.2d 575, 580[9] (Mo.App. 1977) (emphasis added). "The proper test . . . is whether the city is able to furnish to the area *services which the municipality presently provides* its populace." *City of Jefferson v. Smith*, 543 S.W.2d 547, 552 (Mo. App.1976). As noted above, Rolla is proposing to provide municipal services within three years to residents of the proposed annexation on the same terms it currently provides the same services to present municipal residents. Rolla need not demonstrate how the residents, either collectively or individually, will pay their portion of the cost. All Rolla must show is that it possesses the financial ability to fund or finance its share of the costs.

At trial, Rolla offered its final Plan of Intent into evidence. The plan sets out the estimated costs to Rolla and the annexed residents of installing sewer and water services. The plan also lists the cash and reserves available to fund its part of the costs of installation. Additionally, several of Rolla's employees testified regarding its ability to provide services to the proposed annex-

---

**6.** Appellants present some arguments about Rolla's proposed funding for other municipal services for the first time in their reply brief. "Assignments of error set forth for the first time in the reply brief do not present issues for appellate

review." *Application of Gilbert*, 563 S.W.2d 768, 771 (Mo.banc 1978); *Jos. A. Bank Clothiers, Inc. v. Brodsky*, 950 S.W.2d 297, 304[20] (Mo.App. 1997).

ation. Their testimony recounted Rolla's financial resources.

From Rolla's Plan of Intent and the employees' testimony, we derive the following information. The total estimated cost of installing water service to the entire proposed annexed area is $980,006.78. Although the annexed residents will ultimately pay most, if not all, of these costs, Rolla might be required to carry the balance for a time. Even so, Rolla's water fund includes $421,553.93 in cash and $1,983,475.90 in reserves. This fund is adequate to finance the water service installation costs, should Rolla need it. The total estimated cost to Rolla of installing sewer service is $797,800. Rolla reports total available sewer funds at $897,186. This is adequate to finance its share of sewer installation costs. These figures show Rolla's financial ability to provide service to the entire Southside Area. The fact that the provision of services may be contingent on residents petitioning for service and contributing some or all of the installation costs does not defeat a finding that Rolla is financially able to provide normal municipal services within a reasonable time not to exceed three years. Appellants' third point is denied.

*Point IV: Alleged Inadmissibility of Testimony of Contiguousness*

Appellants' fourth point relied on states:

"THE TRIAL COURT ERRED IN CONDITIONALLY ALLOWING THE TESTIMONY OF THE WITNESS HOSMER AS TO THE MEASUREMENTS OF THE PERIMETER OF THE ANNEXED PROPERTY, THE PORTION OF THE CITY LIMITS CONTIGUOUS TO THE ANNEXED PROPERTY, AND THE PERCENTAGE OF THE ANNEXED PROPERTY'S PERIMETER AS CONTIGUOUS TO THE ROLLA CITY LIMITS SUCH TESTIMONY BEING TIED TOGETHER BY THE PERSON WHO ACTUALLY DID THE CALCULATION AS THERE WAS NO SUCH TESTIMONY AT TRIAL AND YET THE COURT ENTERED ITS FINDINGS OF FACT AND CONCLUSIONS OF LAW RELYING ON THESE CALCULATIONS."

■ Our analysis and resolution of Appellants' first and second points dispose of this point. As explained under Points I and II, Rolla offered and the trial court received in evidence a sufficient legal description for the Southside Area at the beginning of trial. When Rolla offered the description, Appellants objected to its admission, but their objection was not sufficiently clear and definite to preserve any claim of error as to the description's sufficiency. Consequently, Hosmer's testimony was not the only evidence in the record to show the requisite contiguousness. The legal description provided sufficient information for anyone, including the trial judge, to determine by simple arithmetic whether the area conformed to the contiguousness requirement of § 71.015.1(1). Under these circumstances, there was no need for Rolla to validate Hosmer's testimony on this subject with the testimony of someone who actually performed the calculation. Point IV is denied.

*Point V: Alleged Lack of Subject Matter Jurisdiction*

■ In their fifth point, Appellants argue that the trial court erred in failing to dismiss Rolla's declaratory judgment action for lack of subject matter jurisdiction after Rolla revised its Plans of Intent and passed new ordinances. Their argument essentially has two prongs. First, Appellants argue that Rolla's revision of its original Plan of Intent and repeal of its original ordinance of annexation, on which this action was originally based, deprived the trial court of subject matter jurisdiction and rendered Rolla's petition defective for failing to state a claim upon which relief could be granted. Second, Appellants argue that a city's Plan of Intent must be prepared and its annexation ordinance approved as "conditions precedent" to filing a declaratory judgment action under § 71.015.1. Because Rolla's revised Plans of Intent and later ordinances were not approved prior to the filing of the present action, Appellants contend that Rolla failed to satisfy all "conditions precedent" to filing a declaratory judgment action based on those plans and ordinances. Thus, they argue, the trial court lacked subject matter jurisdiction to proceed in the present action on the later plans and ordinances. Appellants conclude

that after Rolla revised its original Plan of Intent and repealed its original ordinance of annexation, there existed no Plan of Intent or ordinance on which the present action could proceed, thereby depriving the trial court of subject matter jurisdiction and rendering Rolla's original and amended petitions defective for failing to state a claim upon which relief could be granted.

■ Rolla contends that Appellants' fifth point can be disposed of by adhering to the maxim that "in order to deny a city the authority to annex because of a procedural violation, prejudice must be demonstrated." *Northern Farms,* 950 S.W.2d at 886[5]. Even though we agree that Appellants have not shown prejudice here, we disagree with Rolla's assertion. Appellants' fifth point does not allege simple procedural deficiency on the part of Rolla. The point relied on challenges the trial court's jurisdiction and the sufficiency of Rolla's petition, issues which we must address without regard to prejudice. Missouri Rules of Civil Procedure, 55.27(g)(2)-(3)(1998). *See James v. Union Elec. Co.,* 978 S.W.2d 372, 376 (Mo.App. 1998); *Phillips v. Bradshaw,* 859 S.W.2d 232, 234 (Mo.App.1993).

Appellants do not dispute that before Rolla filed its declaratory judgment action, it had sequentially completed the procedures prescribed by § 71.015.1(1)-(4). Thus, initially, the trial court had subject matter jurisdiction. The issue before us, then, is whether the trial court lost subject matter jurisdiction as a result of Rolla's actions after this action was initiated.

We are not persuaded that Rolla's actions here—i.e., twice amending its Plan of Intent and adopting new ordinances after initiating this action—deprived the trial court of subject matter jurisdiction. Section 71.015.1(5) does not prohibit a city from altering its Plan of Intent or ordinance once a declaratory judgment action has been initiated. In pertinent part, § 71.015.1(5) states, "Following the hearing, should the governing body of

the city ... vote favorably by ordinance to annex the area, *then before proceeding as otherwise authorized by law* ... for annexation of unincorporated areas, file an action in the circuit court ... praying for a declaratory judgment authorizing such annexation." (Emphasis added.) As we read this provision, the italicized phrase is the legislature's primary concern with regard to the timing of the declaratory judgment action. The legislature is simply calling on cities to obtain judicial approval of a proposed annexation before submitting the proposal to voters. *See* § 71.015.1(6). This purpose is not frustrated by allowing a city to amend its Plan of Intent or ordinance prior to the court's entry of judgment authorizing the city to proceed with annexation.

As we understand the statute, the key event is the entry of judgment authorizing annexation, not the timing of a city's filing. Ultimately, the city is authorized to proceed only with the plan the court approves. Thus, allowing a city to alter its Plan of Intent or ordinance after filing a declaratory judgment action does not enable the city to escape or evade the judicial approval requirement. We note, however, that there may be instances in which the city's alterations are so substantial as to warrant dismissal of a declaratory judgment action. *See City of St. Peters, Mo. v. Klein,* 954 S.W.2d 586 (Mo.App.1997). We do not believe this case presents us with such a situation. Thus, we conclude that the trial court was not divested of subject matter jurisdiction in this case.

■ We find support for this conclusion in *Gosewisch,* 932 S.W.2d at 840, on which the trial court relied. In *Gosewisch,* after the city initiated its declaratory judgment action, it amended its Plan of Intent but did not submit it to the public at a hearing. The western district held that the trial court did not err in entering declaratory judgment in favor of the city despite the city's failure to hold a public hearing on the revised Plan of Intent.[7] Thus, under *Gosewisch,* it would

---

7. Although the appellants in *Gosewisch* did not challenge the trial court's subject matter jurisdiction, the reviewing court must necessarily have considered the matter. Any action of a circuit court lacking subject matter jurisdiction is null and void, *Danner v. Dir. of Revenue,* 919 S.W.2d 285, 287[5] (Mo.App.1996), and the appellate court in *Gosewisch* could not have properly considered the merits of the case without first determining that the trial court did, in fact, have

have been permissible for Rolla to amend its Plan of Intent without holding another public hearing. Nevertheless, Appellants urge us to hold that Rolla's decision to amend its Plan of Intent, hold another public hearing, and pass a new ordinance after having initiated this action requires Rolla to refile its declaratory judgment action in order to comply with the sequential requirements of § 71.015.1. In light of *Gosewisch,* such a holding would be illogical and absurd. In effect, Appellants are asking us to penalize Rolla for having attempted to comply with § 71.015.1 to a greater extent than did the city in *Gosewisch.* This we will not do. As Rolla stated in a motion to amend its petition, to hold otherwise would

> "curiously place[ ] [Rolla] in the position of being denied the opportunity to [proceed] because it granted the residents of the annexation area more due process (an additional public hearing) than that to which they were entitled. In effect, [Rolla would be] punished for affording said residents *too* much opportunity to be heard."

▮▮▮▮ We also conclude that Rolla's petition did not fail to state a claim upon which relief could be granted. "The real test of the sufficiency of the averments of a petition for declaratory judgment is whether the petition invokes substantative principles of law which entitle plaintiff to relief." *S v. W,* 514 S.W.2d 848, 855[14] (Mo.App.1974). In reviewing the sufficiency of a petition for declaratory judgment, its language must be given a liberal construction. *Id.* at 855[13]. Moreover, an appellate court assumes every fact pled as true and assumes every inference in favor of the pleader which may reasonably be drawn from those facts. *Id; Killian Const. v. Jack D. Ball & Assoc.,* 865 S.W.2d 889, 890 (Mo. App.1993).

Here, both the original and amended declaratory judgment petitions pled that Rolla had complied with the § 71.015 requirements of developing a Plan of Intent for a proposed annexation, submitting the plan of annexation at a public hearing, and enacting an ordinance authorizing the proposed annex-

ation. These allegations—coupled with Rolla's other allegations that the proposed annexation met the contiguousness requirement and that the annexation was reasonable and necessary—sufficiently stated a claim for declaratory judgment review of the proposed annexation. We find no error in the trial court's overruling of Appellants' motion to dismiss Rolla's petition.

▮▮▮▮ In reaching this conclusion, we do not ignore the fact that Rolla's amended petition did not refer to its latest Plan of Intent and ordinance. Although Rolla attempted to amend its petition a second time in order to reflect its most recent Plan of Intent and ordinance of annexation, the trial court apparently did not rule on the motion. That fact did not, however, render the amended petition defective. It merely left Rolla with a pleading that did not conform to its evidence concerning ordinance compliance. At trial, when Rolla offered its latest ordinance of annexation and revised Plan of Intent into evidence, Appellants objected to both but *not on the basis that Rolla failed to properly plead them.* "Failure to timely and specifically object to evidence on the ground that it is beyond the scope of the pleadings constitutes consent for determination of issues thereby raised." *Kackley v. Burtrum,* 947 S.W.2d 461, 465[7] (Mo.App.1997) (citing *Midwest Materials Co. v. Village Dev. Co.,* 806 S.W.2d 477, 488[8] (Mo.App.1991)).

We hold, therefore, that the court had subject matter jurisdiction and that Rolla's pleading was not subject to dismissal for failure to state a cause of action. Appellants' fifth point is denied.

*Point VI: Proof of Reasonableness and Necessity of Annexation*

▮▮▮▮ Appellants' sixth point asserts that the trial court erred when it found that Rolla's decision to annex the Southside Area was reasonable and necessary. They contend that the evidence shows that the reasonableness and necessity of the annexation were not fairly debatable, that the evidence establishes the annexation was unreasonable and

subject matter jurisdiction because "there is nothing for [an appellate court] to review in a null and void order," *Miller v. Mauzey,* 917

S.W.2d 633, 636[4] (Mo.App.1996). Thus, the case is relevant to our consideration of Appellants' challenge here.

unnecessary, and that the trial court erred when it deferred to the judgment of Rolla's legislative body on this issue.

■■■■■ The following factors are among those to be weighed when deciding whether a decision to annex was reasonable and necessary:

"(1) a need for residential or industrial sites within the proposed area; (2) the city's inability to meets its needs without expansion; (3) consideration only of needs which are reasonably foreseeable and not visionary; (4) past growth relied on to show future necessity; (5) in evaluating future needs, the extent to which past growth has caused the city to spill over into the proposed area; (6) the beneficial effect of uniform application and enforcement of municipal zoning ordinances in the city and in the annexed area; (7) the need for or the beneficial effect of uniform application and enforcement of municipal building, plumbing and electrical codes; (8) the need for or the beneficial effect of extending police protection to the annexed area; (9) the need for or beneficial effect of uniform application and enforcement of municipal ordinances or regulations pertaining to health; (10) the need for and the ability of the city to extend essential municipal services in the annexed area; (11) enhancement in value by reason of adaptability of the land proposed to be annexed for prospective city uses; and (12) regularity of boundaries."

*City of Centralia v. Norden*, 879 S.W.2d 724, 727 (Mo.App.1994) (citing *City of Ballwin v. Hardcastle*, 765 S.W.2d 324, 327–328 (Mo. App.1989)). The presence or absence of any individual factor is not determinative, and reasonableness and necessity must be judged on a case-by-case basis. *Id.* at 724[16].

Here, Appellants make only limited arguments to support this point. First, they assert that "earlier plans of intent by … Rolla show that the city did not need any more land to meet its needs." Their only evidentiary support for this claim is a chart that Appellants produced out of a preliminary draft of a prior comprehensive plan—not a Plan of Intent—which suggested a negative need for additional land to sustain growth in the future. However, Appellants fail to even mention that Rolla never used or relied on the chart. Rolla's planning director, Thomas Hosmer, testified that the chart was erroneous in that it mistakenly compared zoning to land use. He further testified that when the error was discovered, the chart was removed from the draft. The chart was never submitted to Rolla's planning and zoning committee for approval, was not part of the comprehensive plan finally adopted by the city council, and was not used in developing the Plan of Intent for this annexation. Consequently, neither the chart nor the information contained therein ever became an official statement or position of Rolla. Instead, Hosmer further examined existing land uses and the suitability and availability of land for development within Rolla and determined that only 65.51 acres of undeveloped land were suitable and available for development.

■■■■■ Further, Hosmer's projection indicated Rolla needed at least 859.27 acres for development to sustain its current level of growth until the year 2010. In generating this projection, Hosmer utilized census data, analyzed information regarding the acreage suitable and available for development in Rolla, compared Rolla's figures on such matters with those of other comparably sized cities, and corrected earlier mistakes in the calculations used to project Rolla's needs. Hosmer also determined that the Southside Area contained 796.87 acres of undeveloped land suitable for development, and he testified that Rolla had begun to "spill over" into the Southside Area. The fact that Rolla still had 65.51 acres available for development within its present boundaries was not fatal to the annexation. *Norden*, 879 S.W.2d at 727–28[8]. A city is not required to use all suitable and available undeveloped land within its boundaries before annexing other lands. *Id.* at 728[9]. Here, Rolla met its burden of producing substantial and competent evidence that its need to annex the Southside Area was at least fairly debatable. We reject Appellants' arguments to the contrary.

Appellants only other argument under this point is that Rolla's evidence was insufficient to present a fairly debatable issue about its

ability to extend essential municipal services to the Southside Area. In essence, Appellants merely reprise the argument they made in Point III, namely, that Rolla's proposals for financing the annexation residents' share of water and sewer installation costs are too speculative. *See McClard,* 437 S.W.2d at 114. Appellants also argue that Rolla's evidence showed a plan of disparate treatment for the residents of the Southside Area. They insist that Rolla's plan focused on providing water and sewer services to the four existing subdivisions in the Southside Area but neglected to "plan for the provision of services" for residents outside the four subdivisions.

We reject these arguments for the reasons stated in our analysis of Appellant's third point. Rolla presented evidence that its municipal services would be extended to all residents of the Southside Area on the same terms as they are extended to Rolla's existing residents. Rolla also adduced evidence, which, if believed by the trial court, established its ability to pay its share of such costs. As explained above, it is not necessary that Rolla show how the residents, either collectively or individually, will pay their part of these costs.[8]

We find the evidence presented by Rolla created a fairly debatable issue that the Southside Area annexation was reasonable and necessary to the proper development of the city. Rolla presented substantial evidence of its ability and intent to carry out the plan. Moreover, Rolla's evidence established that it will provide municipal services to the entire Southside Area within the three-year time period established by § 71.015(4)(b). Point VI is denied.

*Point VII: Alleged Errors Allowing Testimony of Contiguousness*

█ In their seventh and final point, Appellants again complain about the trial court's rulings on witness Hosmer's testimony regarding the contiguous boundary issue. They insist that Hosmer should not have been allowed to testify about the use of computer reports or maps generated by a computer program called AutoCAD because (a) Rolla did not lay a proper foundation for Hosmer's testimony on this subject, and (b) the testimony adduced was inadmissible hearsay. Continuing, Appellants argue that allowing such testimony was reversible error because the trial court "necessarily relied" on this evidence when it found that Rolla had shown the Southside Area was sufficiently contiguous to Rolla's existing limits. We disagree. Again, our analysis and resolution of Appellants' first and second points are dispositive. Rolla presented other competent evidence of contiguousness when it offered into evidence its legal description of the Southside Area. The trial court was free to consider and rely on the legal description for this purpose. Point VII is denied.

The judgment is affirmed.

MONTGOMERY and BARNEY, JJ., concur.

---

8. *McClard,* cited by Appellants, stands for the proposition that a city's annexation plan is unreasonable where unapproved federal and state grants are the only proposal advanced for paying installation costs on sewers needed to serve the annexed area. *McClard,* 437 S.W.2d at 121.

"The availability of funds from either the federal government or from the state, so necessary to initiate the improvement, is so uncertain that any finding as to probability would be mere guesswork." *Id.* The facts of *McClard* make it inapposite as authority to support Appellants' argument.